No. 45,423

STATE OF KANSAS, *Appellee*, v. GEORGE L. CARREIRO, *Appellant.*

(457 P. 2d 123)

Opinion filed July 17, 1969.

*Gaylord Reichart*, of Burlington, argued the cause and was on the brief for the appellant.

*Adrian M. Farver,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a direct appeal by the defendant in a criminal action from a conviction for escaping lawful custody contrary to the provisions of K. S. A. 21-734. Appeal has been duly perfected.

The underlying issue presented is whether the appellant was in lawful custody on June 26, 1967, at the time he actually departed from the Pomona Reservoir Honor Camp, and thereby unlawfully gained his liberty contrary to the provisions of 21-734, *supra.*

On the 19th day of March, 1965, the appellant was sentenced to the Kansas State Penitentiary at Lansing, Kansas, for a term less than life by the district court of Reno County, Kansas, upon his plea of guilty to the crime of uttering, as defined by K. S. A. 21-609.

On the 24th day of January, 1967, while the appellant was serving the sentence imposed by the district court of Reno County, he was transferred by the Director of Penal Institutions of the State of Kansas from the Kansas State Penitentiary at Lansing to the Kansas State Industrial Reformatory at Hutchinson as a permanent party to the Honor Camp at Pomona Reservoir. The appellant remained at the Pomona Honor Camp until his departure therefrom on the 26th day of June, 1967.

The Pomona Honor Camp is located at the Pomona Reservoir which is situated wholly within Osage County, Kansas. The campsite is located approximately four miles north of Lyndon on U. S. Highway No. 75, and is located on a portion of the public park leased to the Kansas State Park and Resources Authority, by the Department of the Army.

The Honor Camp consists of approximately two acres of land and the facilities thereon for prison inmates assigned to the camp are mobile units providing dining and sleeping accomodations. There is also a movable building located on the site which provides laundry and recreational facilities for the prison inmates, as well as housing for camp supplies. A small trailer house provides quarters and office space for the correctional officers in charge of the prison inmates assigned to the Honor Camp. The camp has no perimeter walls or fences, and the officers in charge are unarmed.

The inmates at the camp perform labor in the public park that is

leased to the Kansas State Park and Resources Authority, and the labor consists of general park clean-up and maintenance work. The work day at the camp begins at 8:00 a. m. and ends at 4:30 p. m., except for those inmates who are selected to cook for the other inmates and perform housekeeping duties in the maintenance of the camp itself. The inmates who cook and perform housekeeping duties are selected on a rotation basis as nearly as possible, and the hours they work vary accordingly.

Three correctional officers are assigned for duty at the Pomona Honor Camp twenty-four hours a day. They are employed by the State of Kansas under the management and supervision of the Director of Penal Institutions, as are other correctional officers who are assigned duty at the Kansas State Penitentiary and the Kansas State Industrial Reformatory. (K. S. A. 75-20d02.)

Upon being transferred to the Honor Camp each inmate is oriented with respect to the conduct expected of him, primarily as it pertains to the inmates' presence which must be known by one of the correctional officers at all times, particularly while at the campsite during nonworking hours. The inmates are allowed time for a limited amount of recreation at the campsite, but are required to be within the above described sleeping facilities by 10:30 p. m.

A "head count" of the inmates is made by the correctional officers periodically during the twenty-four hour day, including the hours while the inmates are performing labor at the direction of personnel employed by the Kansas State Park and Resources Authority. On the 26th day of June, 1967, Royce Pendlay, one of the correctional officers, made a "head count" of the inmates at 10:30 p. m., at which time the appellant was present. Another "head count" made at 11:45 p. m. on that day disclosed the appellant was not present at the camp.

The appellant was not seen again by any correctional officer or other prison official employed by the State of Kansas until the 11th day of September, 1967, at which time he was returned to the Kansas State Penitentiary from the custody of the Los Angeles police department, Los Angeles, California.

Thereafter the appellant was returned to Osage County, Kansas, where in accordance with K. S. A. 62-401 he was tried by a jury and convicted of the crime of escape as defined by K. S. A. 21-734, which reads:

"If any person confined at hard labor for any term less than life shall escape therefrom without being guilty of breaking such prison within the meaning of

the preceding section, he shall upon conviction be punished by confinement and hard labor for a term not exceeding three years, to commence at the expiration of the original term of imprisonment."

The preceding section, K. S. A. 21-733, reads:

"If any person confined in the penitentiary for any term less than life shall escape from such prison or from the custody of the officers, he shall be liable to the punishment imposed for breaking prison."

From the foregoing two sections it is apparent that 21-733, *supra,* makes it a criminal offense to escape from confinement in the penitentiary or from the custody of the officers at the penitentiary, while 21-734, *supra,* makes it a criminal offense to "escape" from confinement at hard labor without breaking prison.

In *State v. Dearman,* 199 Kan. 357, 430 P. 2d 285, the court said:

"To determine which of the various statutes relating to escape is applicable to the situation at hand, consideration of each of the sections is required. K. S. A. 21-732, 21-733, 21-734 and 21-737 all relate to the confinement of a person 'for any term less than for life.' In 21-733, *supra,* specific reference is made to confinement in the penitentiary, while in both 21-734, *supra,* and 21-737, *supra,* at hard labor is specifically mentioned in connection with the confinement. Clearly, the confinement mentioned in each of these sections has reference to sentence resulting from a felony conviction. A study of the severity of the sentence prescribed for a violation of each of these sections also discloses they relate to felony convictions." (pp. 358, 359.)

Here, too, application of 21-734, *supra,* to the situation at hand requires a consideration of K. S. A. 21-732, 21-733 and 21-734.

Another recent case dealing with the crime of "escape" is *State v. Davis,* 199 Kan. 33, 427 P. 2d 606, where the court said:

". . . Our statutes relating to the administration of justice do not define the term 'escape.' It has been held that statutes enacted covering escape have been considered declaratory of, and supplementary to, the common law. . . . At the common law, the crime of 'escape' was committed by a prisoner when he voluntarily departed from lawful custody without breach of prison. . . . *To constitute an escape on the part of the prisoner there must be lawful custody and an actual departure from the place of confinement whereby he unlawfully gains his liberty.* . . . The use of force or violence is not a necessary element of an escape . . ., and an escape is distinguished from prison break by this circumstance. . . ." (p. 35.) (Emphasis added.)

Was the appellant in lawful custody when he departed from the place of confinement at the Pomona Honor Camp?

The appellant would answer this question in the negative, and makes various approaches in his attack. In his motion for a new trial the appellant challenged three instructions given by the trial court

as erroneous. If these instructions are correct the foundation of his attacks fails. These instructions are:

"No. 6. The law provides that under the general supervision and management of the State Director of Penal Institutions, all persons committed to the State Penitentiary at Lansing or the Industrial Reformatory at Hutchinson are required to perform labor in the construction and repair of the buildings or property on state owned or leased grounds. The Warden of the Penitentiary and the Superintendent of the Industrial Reformatory shall, when so requested by the Director of Penal Institutions, designate such prisoners as are deemed trustworthy, dependable and capable for such employment. It is also provided by law that under the direction of the Director, the Warden shall employ the surplus prison labor in extending and repairing the state and county roads and upon other work exclusively for the benefit of the state.

"A person lawfully committed to the penitentiary who is transferred or assigned to perform such work or labor is in lawful custody at the place assigned.

"No. 10. The written instrument identified as Exhibit 5 is a commitment on a judgment rendered and sentence imposed on the 19th day of March, 1965, by the District Court of Reno County, Kansas, and constitutes lawful custody and the defendant was lawfully committed thereon for a term less than life, to the Kansas State Penitentiary at Lansing, Kansas, and that the same thereafter continued and was on June 26, 1967, in full force and effect. [This instruction has not been attacked on appeal.]

"No. 11. By the terms of the written instrument identified as Exhibit 2, the defendant was lawfully transferred to the Pomona Honor Camp."

In our opinion these instructions correctly state the law.

The information originally filed charged that the appellant did "unlawfully, willfully and feloniously, while confined at hard labor for a term less than life, escape therefrom without breaking the prison of the penitentiary."

Thereafter the trial court sustained a motion to quash on the ground the information was insufficient to apprise the appellant of the nature and cause of the criminal act charged.

The appellant was then charged in an amended information which reads that the appellant did:

". . . unlawfully, willfully and feloniously, while confined at hard labor for a term less than life, being lawfully committed to the Kansas State Penitentiary at Lansing, Kansas, on a commitment issued on a judgment rendered and sentence imposed on the 19th day of March, 1965, by the District Court of Reno County, Kansas, and being therefrom transferred on the 24th day of January, 1967, by order of the Director of Penal Institutions, State of Kansas, pursuant to K. S. A. 76-2442 and K. S. A. 76-2442a, to the Kansas State Industrial Reformatory at Hutchinson, Kansas, as a Permanent Party to the Honor Camp at Pomona Reservoir located in Osage County, Kansas, escape therefrom without breaking the prison of the Penitentiary. . . ."

The basis of the appellant's attack in most of his specifications of error is that he was convicted of escape without breaking the prison of the penitentiary on a charge of escaping from the Pomona Reservoir Honor Camp. Stated in another way, the appellant asks whether the crime of escaping without breaking the prison of the penitentiary can be committed by absenting himself from the Pomona Reservoir Honor Camp.

The appellant has attacked the information on the ground the trial court did not have venue or jurisdiction of the offense alleged, and that the information did not state facts sufficient to constitute a public offense. He makes a further attack contending his motion to discharge should have been sustained on the ground the evidence was insufficient to support the verdict, and that the trial court erred in giving instructions to the jury.

It must be conceded K. S. A. 62-401 makes it mandatory that a criminal offense be prosecuted in the county in which it is committed. It has been held that a court must have venue of an offense or it does not have jurisdiction. (*State v. Fields,* 182 Kan. 180, 318 P. 2d 1018.)

The appellant argues nowhere in the statutes is there created a state penal institution in Osage County, Kansas, or one which could be called or considered a prison or penitentiary as contemplated in K. S. A. 21-734 or 21-733. If the appellant's conviction is upheld, it is argued, the Director of Penal Institutions is given the authority under K. S. A. 76-2442a to create venue or jurisdiction over the offense charged, and he is thereby authorized to modify the code of criminal procedure. The appellant argues the trial court could not find that 21-734, *supra,* applied to an Honor Camp situation; that to do so would hold the Honor Camp facility to be the prison or penitentiary. To pursue his point further the appellant contends he was neither in lawful custody nor in confinement pursuant to his conviction and commitment when he departed the Pomona Reservoir Honor Camp because his custody and confinement at the time of departure was pursuant to K. S. A. 76-2442 and 76-2442a.

The appellant contends to construe 76-2442 and 76-2442a, *supra,* together with 21-734, *supra,* as creating the crime of escaping from an Honor Camp is violating the well recognized criminal rule against any liberal construction of a criminal or penal statute.

We think the appellant misconstrues the applicable statutes.

K. S. A. 76-2311 authorizes the State Director of Penal Institutions

to transfer prisoners from the state penitentiary to the reformatory in the following language:

"The director may make requisition upon the warden of the state penitentiary, who shall select such prisoners as are required by such requisition from among the youthful, well-behaved and most promising prisoners of the state penitentiary convicted of felony, and transfer them to the reformatory, for education and treatment under the rules and regulations thereof; and the director is hereby authorized to receive and retain, during the term of their sentence to the state prison, such prisoners so transferred."

Among other things 76-2442, *supra*, authorizes the warden to employ prisoners in the penitentiary to perform labor in extending and repairing the state and county roads, and upon other work exclusively for the benefit of the state.

K. S. A. 76-2442a provides in part:

"The director is hereby authorized to use any of the prisoners at the state penitentiary and the industrial reformatory at Hutchinson, for common or skilled labor so far as practicable in the construction and repair of the buildings or property on state owned or leased grounds. The warden of the penitentiary and the superintendent of the industrial reformatory shall, when so directed by the director, designate such prisoners as within their discretion are deemed trustworthy, dependable and capable for such employment. All such prisoners shall be accompanied by sufficient guards designated by such officers: . . ."

Under the foregoing statutes it is readily apparent the appellant was properly assigned to the Honor Camp at Pomona Reservoir to perform "hard labor" pursuant to his commitment.

The evidence established that the appellant was in the lawful custody of correctional officers assigned for duty at the Pomona Honor Camp; that these officers were employed by the State of Kansas under the management and supervision of the Director of Penal Institutions. The appellant, therefore, was *in lawful custody* at the place to which he was assigned *for work* in Osage County.

To adopt the reasoning of the appellant would mean that a prison inmate could not be employed to perform labor on state property outside Leavenworth and Reno Counties where the penal institutions are located. It is inconceivable the legislature had any such geographical restriction in mind when it passed the legislation in question authorizing employment of prison inmates. We hold the statutes authorizing the use of prison labor authorizes the performance of such labor in each and every county of the state.

K. S. A. 21-734 is a penal statute and has statewide application. We think the appellant erroneously construes 21-734, *supra*, to

require that the escape of a prisoner shall be from the penitentiary. Such construction fails to give adequate consideration to K. S. A. 21-732 and 21-733.

By the provisions of 21-733, *supra,* the escape of a prisoner is limited to a person *confined in the penitentiary* for any term less than life. This statute then proceeds to speak of the escape *from such prison* or from the custody of the officers at the penitentiary.

The language of 21-734, *supra,* does not speak of a person confined in the penitentiary, but of a person "confined at hard labor for any term less than life" who "shall escape therefrom," where the escape does not fall within the provisions of 21-733, *supra.* The further expression "without being guilty of breaking such prison" within the meaning of the preceding section *is designed to exclude those who escape from confinement in the penitentiary.* The literal interpretation of the provisions of 21-734, *supra,* covers the situation in which the appellant escaped precisely. He did not escape from confinement in the penitentiary, but did escape while in lawful custody under a court order which confined him at hard labor for a term less than life.

The elements of the crime of "escape" under 21-734, *supra,* are (1) the prisoner must be in lawful custody serving a sentence confining him at hard labor for a term less than life; and (2) the prisoner must actually depart from the place of confinement where he unlawfully gains his liberty. These elements were established by the evidence presented by the state, and upon such evidence the jury found the appellant guilty. The evidence consisted of the testimony of witnesses and a certified copy of the journal entry, sentence and commitment of the appellant, together with a certified copy of the order of transfer dated January 24, 1967, signed by the Director, disclosing the transfer of the appellant to the Kansas State Industrial Reformatory, Hutchinson, Kansas, as a permanent party to the Honor Camp at Pomona Reservoir. This transfer recited as authority the provisions of 76-2311 and 76-2442a, *supra.* It has been held that certified copies of the records of commitment of a prisoner kept by state penal institutions as authorized or required by law are admissible in evidence to prove lawful confinement. (*State v. Davis,* supra; *State v. Hall,* 187 Kan. 323, 356 P. 2d 678; *State v. Loyd,* 187 Kan. 325, 356 P. 2d 825; and see K. S. A. 60-465 [2] and [3].)

There is no dispute in the evidence that the appellant actually

departed from the Pomona Honor Camp located in Osage County, Kansas, on June 26, 1967.

The appellant's contention that he was illegally transferred from the Kansas State Penitentiary at Lansing, Kansas, to the Kansas State Industrial Reformatory at Hutchinson, Kansas, as a permanent party to the Honor Camp at Pomona Reservoir is without merit. The work performed by the appellant while assigned for labor and correction to the Pomona Honor Camp was exclusively for the benefit of the state.

The appellant contends the trial court erred in excluding certain testimony of the witness, Charles D. McAtee, the Director of Penal Institutions.

The appellant's proffer of the testimony of Mr. McAtee pertains to financial arrangements made with the State Park and Resources Authority for any building or repair done at the Pomona Reservoir Honor Camp in compliance with the provisions of 76-2442a, *supra.* This testimony was immaterial to the issues in the case, and the trial court properly sustained an objection thereto. The authority of the Director of Penal Institutions to transfer the appellant to the Pomona Reservoir Honor Camp is a question of law to be determined from the statutes and not a question of fact.

After a careful review of the record presented on appeal, we hold the appellant has failed to make it affirmatively appear the trial court erred.

The judgment of the lower court is affirmed.