No. 56,334

STATE OF KANSAS, *Appellant*, v. DAVID D. GARRETT, *Appellee*.

(684 P.2d 413)

Opinion filed June 8, 1984.

*Geary N. Gorup*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, and *Clark V. Owens*, district attorney, were with him on the brief for the appellant.

*Michael Barbara*, of Sawhill, Underhill & Barbara, of Haysville, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal by the State from an order dismissing a complaint charging the defendant, David D. Garrett, with aggravated escape from custody (K.S.A. 21-3810). The facts in the case are not in dispute and were stipulated by the parties as follows:

(1) The defendant, David D. Garrett, was convicted of the offense of forgery (K.S.A. 21-3710[b]), a felony, by plea of guilty on May 20, 1982, in Sedgwick County Case No. 82-CR-64. Defendant was placed upon a three-year suspended sentence to obey certain terms and conditions.

(2) Upon the defendant's failure to comply with the terms and conditions of his suspended sentence, the district court set aside the suspended sentence on March 1, 1983, and committed the defendant to serve a sentence of not less than one year nor more than ten years upon his forgery conviction in Case No. 82-CR-64.

(3) Pursuant to a timely filed motion to modify by the defendant, the district court on August 9, 1983, modified the defendant's sentence in Case No. 82-CR-64 and placed the defendant on probation for a period of three years to obey certain terms and conditions including that he reside at the Community Corrections Center, 1158 North Waco, Wichita, to obey all the rules and

regulations of the center, and to obey all the requirements made by his case manager and counselor at the center.

(4) Pursuant to that order, the defendant, on August 9, 1983, entered the program and began residence at the Community Corrections Center, and on that date signed a seven-page Community Corrections Center agreement. The Community Corrections Center agreement provided in part as follows:

"The above-named client agrees to abide by all applicable laws, rules, ordinances and regulations of the Sedgwick County Community Corrections. Special attention is directed to the following statement:

"ANY RESIDENT RELEASED TO THE CUSTODY OF SEDGWICK COUNTY COMMUNITY CORRECTIONS AND WHO WILLFULLY FAILS TO RETURN TO THE DESIGNATED PLACE OF HOUSING AT THE TIME SPECIFIED IN THE PLAN MAY BE GUILTY OF ESCAPE FROM CUSTODY AND UPON CONVICTION BE SUBJECT TO THE PENALTY PROVIDED IN THE KANSAS STATUTES ANNOTATED."

"Resident Rules

"During placement at the Sedgwick County Community Corrections Center, residents shall obey all laws, applicable ordinances, housing regulations and the following standard corrections center rules:

"1. Residents shall adhere to all laws. Illegal behavior may be substantiated at a disciplinary hearing or a court of law if said conduct is classified as a misdemeanor or felony at the time of the incident.

. . . .

"9. Residents are to be at their designated place of assignment (work, housing facility, or on furlough). Residents are responsible for notifying the housing staff of *any* proposed changes in their work schedule or furlough plan and must receive staff approval of such changes. Residents are to directly go to and from work by the approved method of transportation, route and time. Furthermore, residents who fail to return to the housing facility or are not at their place of assignment, *may be guilty of Escape* under the Kansas Statutes Annotated.

"10. Should any situation occur which prevents a resident from returning to the Center at the prescribed time, he/she shall immediately telephone the Center for instructions. Should approved work, study, training, or community service program terminate ahead of schedule, the resident shall immediately and without delay, return to the Residential Center.

. . . .

"14. Residents may not leave Sedgwick County while placed in the facility without previous staff approval (job-seeking, employment or emergency only)."

" Possible Disciplinary Measures

"When residents are found to be in violation of facility regulations, it is the responsibility of staff to take appropriate action promptly and fairly in accordance with due process safeguards. The following disciplinary measures may be imposed by staff against residents of the corrections center, depending on the seriousness of the violation(s).

"1. Reprimand (usually verbal).

"2. Special conditions added to the case plan (alcohol treatment, drug treatment, marital counseling, etc.).

"3. Placement in any phase of the level system and/or reduction of any/all points.

"4. Partial restriction of furlough privileges.

"5. Complete restriction of furlough privileges.

"6. Extra duty in the facility.

"7. *Referral to prosecuting authority for violation of the law.*

"8. Removal from the program and placement in the Sedgwick County jail pending a court hearing.

"9. Imposition of several disciplinary measures at the same time (restriction, extra duty, special conditions, etc.).

"I have read (had read to me) the above and understand these are the disciplinary options available to staff at the Community Corrections Center which may be used if I am in violation of any of the conditions of my release. I further understand that should I violate the conditions of my release by fleeing to another state, I hereby agree to waive Extradition to be returned to Kansas."

(5) On September 16, 1982, the defendant checked out of the Community Corrections Center on a job-seeking furlough with a specified scheduled return time of 12:30 p.m. on that date. He did not return to the Community Corrections Center until 10:00 p.m. that same night. The defendant had gone to Pittsburg, Kansas, to visit his family instead of looking for a job, and he was brought back to the center by family members.

(6) The Community Corrections Center is a two-story, nonsecured, residential facility which houses felony offenders eligible for the community corrections program operating in Sedgwick County pursuant to K.S.A. 1983 Supp. 75-5290 *et seq.*

(7) The defendant used neither violence nor any threat of violence against any person in leaving the extended area of confinement (*e.g.,* the City of Wichita) in violation of the rules and regulations of the Community Corrections Center.

On September 16, 1983, a complaint/information was filed in this case charging the defendant with escape from the Sedgwick County Community Corrections Center, while held in lawful custody upon the conviction of forgery under Case No. 82-CR-64. On September 29, 1983, defendant's counsel filed a motion to dismiss for the sole reason that there was "no factual basis to support the charge alleged." The motion to dismiss was submitted to the district court on the factual stipulation set forth above. Counsel for defendant filed a brief in support of the motion to dismiss in which the only point argued was that aggravated escape from custody (K.S.A. 21-3810) is not an appropriate charge to bring against an individual who, without permission,

leaves a community corrections residential program. There was no constitutional issue raised in defendant's brief. The State filed a memorandum brief in opposition to defendant's motion to dismiss. In the State's brief, various statutes and court decisions were reviewed and the State urged the district court to rule that K.S.A. 21-3810 was applicable. No constitutional issue was discussed in the State's brief.

On November 18, 1983, the district court filed its order sustaining the defendant's motion to dismiss. In its order, the court found that, based upon the stipulation of facts, K.S.A. 21-3810(a) is unconstitutional as applied to this defendant in a community corrections setting. The constitutional issue had not been raised by either of the parties prior to the court's decision, and the court did not state in its order of dismissal why the statute was unconstitutional. On November 18, 1983, the State filed its notice of appeal. There is no transcript of any proceeding in the record on appeal.

The basic issue presented on the appeal is whether the district court erred in dismissing the complaint. There are two questions involved which, simply stated, are as follows:

(1) Whether K.S.A. 21-3810, which provides for the offense of aggravated escape from custody, is applicable to a convicted felon who, without permission and in violation of the rules, leaves a community corrections program, and

(2) Whether K.S.A. 21-3810(a) is unconstitutionally vague and ambiguous when applied to a convicted felon who departs from a community corrections residential program without permission. In order to determine these issues, we believe it would be helpful at the outset to review the applicable statutory provisions and court decisions pertaining to the offenses of escape from custody and aggravated escape from custody.

In 1982, the Kansas legislature amended K.S.A. 21-3809 to clarify the crime of escape from custody. K.S.A. 1983 Supp. 21-3809 provides as follows:

"21-3809. **Escape from custody.** (a) Escape from custody is escaping while held in lawful custody on a charge or conviction of misdemeanor.

"(b) As used in this section and K.S.A. 21-3810 and 21-3811:

"(1) 'Custody' means arrest, detention in a facility for holding persons charged with or convicted of crimes, detention for extradition or deportation, detention in a hospital or other facility pursuant to court order or imposed as a specific condition of probation or parole or any other detention for law enforcement

purposes. 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail.

"(2) 'Escape' means departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court.

"(c) Escape from custody is a class A misdemeanor."

. K.S.A. 21-3810 provides for the offense of aggravated escape from custody in the following language:

"21-3810. **Aggravated escape from custody.** Aggravated escape from custody is:

"(a) Escaping while held in lawful custody upon a charge or conviction of felony; or

"(b) Escaping while held in custody on a charge or conviction of any crime when such escape is effected or facilitated by the use of violence or the threat of violence against any person.

"Aggravated escape from custody is a class E felony."

As originally enacted, K.S.A. 21-3809 did not define the term "custody." Definition of that term was added by the 1982 amendment. It should be noted that "custody" means *detention* in a facility for holding persons charged with or convicted of crimes or detention in a facility pursuant to court order or imposed as a specific condition of probation or parole or any other detention for law enforcement purposes. It is specifically provided that custody does not include *general supervision* of a person on probation or parole. The first question which arises is whether the defendant, David D. Garrett, was being held in detention in one of the described facilities. In several decisions this court has discussed the concept of custody and its relationship to detention.

In *State v. Pritchett*, 222 Kan. 719, 567 P.2d 886 (1977), a juvenile ran away from a youth center. After the escape, he was admitted to St. Francis Hospital in Topeka for medical reasons. He also left there without permission. The only issue presented on the appeal was whether the boy was in the custody of a juvenile facility or institution while in the hospital. The court in a unanimous decision held that he was. In that opinion, Justice Owsley discussed a number of relevant cases and then concluded:

"The common thread which runs through these cases is the idea that custody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. (*Jones v. Cunningham*, 371 U.S. 236, 242, 9 L.Ed.2d 285, 83 S.Ct. 373, 92 A.L.R.2d 675.) There is no requirement that the prisoner be

constantly supervised or watched over by prison officials. (*United States v. Rudinsky*, [439 F.2d 1074, 1076 (6th Cir. 1971)].) The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." 222 Kan. at 720.

The court reasoned that it made no difference that the escape was from a hospital without youth authorities present. The boy was still in their custody in the sense required by the statute. The court in *Pritchett* referred to *United States v. Rudinsky*, 439 F.2d 1074 (6th Cir. 1971), where a prisoner was confined in a federal treatment center after conviction for mail theft. While there, he was placed on a work release program which allowed him to leave the facility during the day and return at night. When he failed to return on time and did not account for his whereabouts, he was hunted, apprehended, and convicted for his waywardness. The appellate court rejected the contention that he was not in custody of prison officials when he disappeared. For similar cases see *Commonwealth v. Hughes*, 364 Mass. 426, 305 N.E.2d 117 (1973); *State v. Furlong*, 110 R.I. 174, 291 A.2d 267 (1972); *Tucker v. United States*, 251 F.2d 794 (9th Cir. 1958); *Giles v. United States*, 157 F.2d 588 (9th Cir. 1946). The statute involved in the federal cases was 18 U.S.C.A. § 751 which is similar to K.S.A. 1983 Supp. 21-3809 and K.S.A. 21-3810.

Another case which discusses the concept of custody is *State v. Carreiro*, 203 Kan. 875, 457 P.2d 123 (1969). There the defendant, an inmate, was transferred from Lansing Penitentiary to the Honor Camp at Pomona Reservoir. The camp had no walls or fences and the officers were unarmed. Each inmate had been informed of the required conduct. The defendant left the sleeping facility of the honor camp without permission. The court held that the defendant had been in lawful custody. The officers assigned for duty at the honor camp were employed by the State and were under the management and supervision of the Director of Penal Institutions. Also in point is *State v. Williams*, 208 Kan. 480, 493 P.2d 258 (1972), where a prisoner was committed to the State Penitentiary and was permitted to live in a dormitory outside the walls of the institution. He left the dormitory without authority and in violation of the rules. In this court, the defendant contended that he had to be confined behind bars in order to be guilty of the offense of breaking. The court rejected this contention, relying upon *State v. Gordon*, 203 Kan. 69, 453 P.2d 80 (1969), and also on *State v. Carreiro*, 203 Kan. 875.

We have carefully considered the language of K.S.A. 1983 Supp. 21-3809 and K.S.A. 21-3810 and the decisions discussed above. We have concluded that the defendant was in custody within the meaning of the statute. He was being detained in a facility for holding persons convicted of crimes and was also being detained in a facility pursuant to court order.

The offense of escape from custody also requires that there be an *escape.* In K.S.A. 1983 Supp. 21-3809, escape is defined as a departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted. In our judgment, the required element of an escape has been established under the stipulated facts. The Community Corrections Center agreement prohibits any resident from willfully failing to return to the designated place of housing specified in the program. Resident rule No. 9 clearly states that residents who fail to return to the housing facility or are not in their place of assignment may be guilty of escape under the Kansas Statutes Annotated. Rule No. 14 also specifically provides that residents may not leave Sedgwick County while placed in the facility without previous staff approval. In the present case, it is undisputed that the defendant departed from Sedgwick County and went to Pittsburg, which is located in Crawford County. Under these circumstances, it·cannot be denied that the defendant departed from custody by going outside the geographical limits prescribed by the program.

The Kansas Community Corrections Act is contained at K.S.A. 1983 Supp. 75-5290 *et seq.* It is clear from a reading of the various sections of that act that the community corrections program is a part of the overall state correctional program. The secretary of corrections is authorized to make grants of state money to counties for the development and operation of community correctional services (75-5291). The corrections advisory board of a particular county is required to develop and implement a comprehensive plan which must be submitted for approval, not only to the board of county commissioners, but also to the secretary of corrections (75-5292[d] & [e]). The community corrections act is to be administered by the secretary of corrections or by employees of the department of corrections (75-5294). The corrections advisory board is responsible for the administration of a community correctional plan and for the correctional

services provided. The corrections advisory board is not a part of the judicial branch of government, although there is a judiciary representative serving on the board (75-5297). One of the correctional services which may be provided is the detention and confinement of adults convicted of crime (75-52,100 and 75-52,102). It is clear from all of these provisions that a community corrections residential center is a detention facility for holding persons convicted of crimes and also for holding persons detained pursuant to a court order or imposed as a specified condition of probation or parole.

K.S.A. 1983 Supp. 75-52,104 sheds further light on the legislative intent. Under that section, a county receiving grants under the program is charged a sum for certain juveniles and felons committed to state facilities. An exception provides that no charges shall be made for persons convicted of Class A, B, and C felonies or persons convicted of Class D or E felonies who had more than one prior felony conviction. There are also other exceptions specified. Section (c) of 75-52,104 provides that the secretary of corrections may waive a charge against a county in a case involving a commitment arising from an *escape* or charge of aggravated juvenile delinquency. By this provision the legislature obviously contemplated that a situation might arise where a resident of a community corrections center would escape by an unauthorized leaving from the center. In that situation, the particular resident could be charged with escape and sentenced to the custody of the secretary of corrections, and the secretary of corrections could waive the charge to the county provided for in 75-52,104.

From the above statutes and court decisions, we have concluded and hold that K.S.A. 21-3810, which provides for the offense of aggravated escape from custody, is applicable to a convicted felon who, without permission and in violation of the rules, departs from a community corrections facility or fails to return following temporary leave lawfully granted. Thus, the complaint in this case properly charged the defendant, David D. Garrett, with the offense of aggravated escape from custody under K.S.A. 21-3810.

We now turn to the question whether K.S.A. 21-3810 is unconstitutionally vague and ambiguous when applied to a convicted felon who departs from a community corrections program

without permission. We have concluded that the statute is neither unconstitutional, vague, nor ambiguous. This court has held that the test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys such warnings, it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. *State v. Lackey,* 232 Kan. 478, 657 P.2d 40 (1983); *State v. Norris,* 226 Kan. 90, 91-92, 595 P.2d 1110 (1979).

At its heart, the test for vagueness is a commonsense determination of fundamental fairness. *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 663, 562 P.2d 65, *modified* 221 Kan. 752 (1977). Applying the test to K.S.A. 21-3810, we hold that that statute is not unconstitutional for vagueness. The statutory definitions of the terms "custody" and "escape," as contained in K.S.A. 1983 Supp. 21-3809, in our judgment are broad enough to include residents of a community corrections facility which is beyond question a facility for detention of persons convicted of crime or detention pursuant to court order or imposed as a specific condition of probation or parole. The trial court erred in holding the statute to be unconstitutional.

The judgment of the district court is reversed. The order dismissing the complaint is set aside, and the case is remanded to the district court for further proceedings.