Porter K. Brown Hutchinson City Attorney P.O. Box 1567 Hutchinson, Kansas 67504-1567
Joseph O'Sullivan Reno County Counselor 315 W. 1st Street P.O. Box 2066 Hutchinson, Kansas 67504-2066
Dear Mr. Brown and Mr. Sullivan:
As city attorney for the city of Hutchinson and county counselor for the county of Reno, respectively, you ask our opinion regarding whether the restraint provided in the below described House Arrest, Inc. program constitutes serving at least forty-eight hours "imprisonment" as that term is used in K.S.A. 8-1567 (driving under the influence) or five days "imprisonment" as that term is used in K.S.A. 8-262 (driving while suspended).
Both the city and the county have entered contracts with House Arrest, Inc. (HAI), a private for profit corporation, to provide a custodial alternative to the Reno county detention center for certain minimum security offenders, in particular those convicted of second or subsequent offense driving under the influence and of second or subsequent offense driving while suspended. The custodial staff, comprised of off-duty sheriff and police officers, are employees of HAI. Besides providing the facility and staff, HAI furnishes meals, bed linens and soap. Both the city and county contracts require payment of $55.00 per offender per day to HAI.
The facility provided for this purpose is the 4-H building located at the Kansas state fair grounds which HAI rents from the Kansas state fair board from time to time to house the offenders. In a letter dated April 5, 1993 the county counselor describes facility security as follows:
 "The primary entrance is locked with a key from the inside. There are several fire exits which are locked from the outside, but which can be operated from the inside by a breaker bar. Alarms on these doors are activated when opened. Employees of the facility are in a position to monitor the doors at all times. Prisoners are not allowed to leave once confined; however, staff do not carry weapons. The [staff] will not become involved in a physical altercation with a prisoner who desires to escape. The language in paragraph IVb. [of HAI's policy and procedure manual] addresses this type of situation, i.e. Escapes"
The paragraph IVb language refered to in the county counselor's letter provides:
"IVb. Escape Plan
Any escape or walkaway from the facility will be dealt with by the court. An incident report will be completed by on duty staff and forwarded to the court.
Staff will not hold or detain any client wanting to leave the facility unless so ordered by the court."
A later amendment to HAI's escape policy details the specific procedure for staff to follow in the event of an escape which includes immediate notification to the sheriff and all other local law enforcement authorities.
Provisions of both the city and county contracts provide:
 "Offenders who do not cooperate with HAI, do not report on time, leave the custody of HAI, or otherwise violate the terms of the confinement will serve their sentences in the Reno County Detention Center or elsewhere, at the election of the appropriate court."
Both the city and the county contracts specify that HAI is not a subdivision of the respective governmental entity. The city contract states that "HAI is at all times serving as an independent contractor." The "independent contractor" language was deleted from the county contract. The preamble of the county contract, unlike the city contract, specifically refers to the parties' intention for the sheriff to "retain constructive control and custody of offenders" and further specifies:
 "Nothing in this Contract shall limit the authority and responsibility of the Reno county Sheriff, pursuant to K.S.A. 22-3427, to exercise constructive control and custody of prisoners during all terms of confinement or to exercise actual control at any time should the Sheriff deem it necessary. It is recognized that all prisoners will be scheduled for and placed in confinement with House Arrest, Inc., at the direction of the sheriff upon receipt of an order of confinement from the District Court. This Contract shall be interpreted and construed to have retained for the sheriff such custody and control of prisoners as is necessary to affect confinement and imprisonment as the same has been and will be interpreted by the appellate courts of Kansas."
K.S.A. 8-1567 defines and sets penalties for driving under the influence of alcohol or drugs (DUI). Upon a second or subsequent conviction, subsections (e) and (f) mandate that the offender be sentenced to 48 consecutive hours imprisonment before becoming eligible for work release and five consecutive days imprisonment before probation, reduction of sentence or parole may be granted. K.S.A. 8-262
defines and sets penalties for driving while one's license is canceled, suspended or revoked (DWS). Subsection (a)(3) requires that each offender be sentenced to a minimum of five days imprisonment and further mandates that upon a second or subsequent conviction that the offender "shall not be eligible for parole until completion of five days'imprisonment." The question is whether the above-described arrangement constitutes "imprisonment."
In relation to DUI convictions, the answer to the question is resolved by the most recent amendment to K.S.A. 8-1567, i.e. section 2 of 1993 Senate Bill No. 423, amending section 8 of 1993 House Bill No. 2355, which defines "imprisonment" to include:
 "any restrained environment in which the court and law enforcement agency intend to retain custody and control of a defendant and such environment has been approved by the board of county commissioners or the governing body of a city."
In our opinion the above-described environment is a "restrained environment." Despite the ability of offenders to exit through the fire safety doors, convicted DUI offenders presumably understand that fulfilment of the court imposed sentence involves a curtailment of liberty which may be satisfied only by remaining at the 4-H building for a specified amount of time. Leaving without court approval will result in serving the sentence in a facility where leaving is not an option,i.e. the Reno county detention center. In addition, the sanction of an escape from custody charge pursuant to K.S.A. 21-2809 ("custody" includes detention in a facility for holding persons convicted of crimes) provides the legal consequence for unauthorized departure. Intent to retain constructive custody and control of convicted offenders by the court and law enforcement agencies is explicit in the county contract with HAI and implicit in the city contract with HAI. Approval of the restrained environment is expressed by the county commissioners and the mayor of the city by virtue of the contracts signed with HAI to provide an incarceration alternative to the Reno county detention center. Accordingly, in our opinion the facility operated by HAI through its contractual agreement with the county and the city is a "restrained environment" in which convicted DUI offenders may lawfully serve a sentence of imprisonment.
As the 1993 legislature did not amend K.S.A 8-262, the issue is not so easily resolved in relation to DWS convictions. Because the term "imprisonment" is not defined in the DWS statute, an evaluation of related case law is required.
A number of Kansas cases have considered whether a convicted offender was "in custody" for purposes of supporting an escape from custody charge [State v. Pritchett, 222 Kan. 719, (1977); State v. Garrett, 235 Kan. 768
(1984); State v. Pinchon, 15 Kan. App. 2d 527 (1991)], determining liability for medical costs [Mt. Carmel Medical Center v. Board of CountyCommissioners, 1 Kan. App. 2d 374 (1977)] and determining whether credit for time served should be allowed [State v. Babcock, 226 Kan. 356
(1979); State v. Meredith, 236 Kan. 866 (1985); State v. Martin,14 Kan. App. 2d 138 (1989)]. From these cases it appears that the Kansas appellate courts consider the concepts of "custody" and "imprisonment" so closely related as to be interchangeable. (E.g., In determining whether jail credit is to be granted on a term of imprisonment, "the crucial question is whether the person is in custody."State v. Babcock, 226 Kan. at 360)
Two cases directly pertain to whether particular arrangements constitute "imprisonment" in relation to DUI sentences. In Meredith,supra, the distrcit court judge allowed the defendant 30 days credit toward his DUI sentence for time spent in a privately operated in-patient alcohol treatment center. The State appealed, raising the sole issue of whether such in-patient treatment satisfied the requirement of imprisonment found in the DUI statute. In reaching a decision in the negative the Meredith court first reviewed Babcock, supra, where after probation was revoked the defendant had sought credit on his sentence for time spent in a half-way house while on probation.
 "One factor utilized by the court in Babcock in determining whether the defendant was in custody in the halfway house was whether he was subject to the control of the courts, correction officers or law enforcement officials. Since Babcock was in the halfway house under the control of a probation officer, he was not under the actual or constructive control of jail officials, and hence could not be given credit for his time spent in the halfway house." Meredith at 868.
The Meredith court then reviewed Pritchett, supra, where an aggravated juvenile delinquency, i.e. escape, conviction was upheld. There the defendant had departed from a hospital where he had been taken for treatment by officials of the youth detention facility where he was imprisoned. In what has become the key language in determining whether an indivual is in custody or at liberty the Meredith court quoted Pritchett:
 "The common thread which runs through these cases is the idea that custody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty is restrained. (Citation omitted.) There is no requirement that the prisoner be constantly supervised or watched over by prison officials. (Citation omitted.) The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." Meredith, 236 Kan. at 868.
Like the probationer Babcock, Meredith was determined not subject to the control, actual or constructive, of prison officials or law enforcement officers while in the alcohol treatment center and thus was not entitled to credit on a DUI sentence of imprisonment. Unlike the hospitalized Pritchett, considered to be in the custody and control of prison officials who had not given up their prisoner, Meredith had been released by prison officials prior to entering the alcohol treatment center. Finding that Meredith was not entitled to credit on his DUI sentence, the court stated:
 "The statute here plainly and clearly requires on a second offense of DUI the offender must spend at least five days in custody of law enforcement officials. Time spent in an alcohol treatment center where an individual is not under the custody and control of law enforcement officials, is no substitute for that minimum imprisonment." Meredith, 236 Kan. at 868-869.
In the second DUI imprisonment case, State v. Martin, supra, the court considered whether a program of work release satisfied the requirement of "imprisonment" for DUI sentencing purposes. Relying on Meredith, the court held that the definition of "imprisonment" excluded work release programs.
If Meredith and Martin, and the cases cited therein, were the only cases to be taken into account, the task at hand would be more manageable as those cases appear to indicate a narrow reading of the term "imprisonment." Unfortunately, cases determining the issue of custody in relation to escape charges are difficult to reconcile with the outcome of the two direct DUI imprisonment cases. In Garrett, supra, the court held that for purposes of supporting an escape conviction, the defendant was in custody when placed at a community corrections facility as a condition of probation. The court in Garrett relied on State v. Carriero,203 Kan. 875 (1969) where a prison inmate who had been transferred to an honor camp without walls or fences was determined to be in lawful custody, and on State v. Williams, 208 Kan. 480 (1972) where a state prisoner who had been permitted to live in an outside dormitory was also determined to be in custody. In addition, the cases cited with approval in Pritchett, supra, add to the apparent confusion: prisoner confined to treatment center and placed on work release program was in custody,United States v. Rudinsky, 439 F.2d 1074 (6th cir. 1971); prisoner who failed to return from furlough was in custody, Commonwealth v. Hughs,305 N.E.2d 117 (Mass. 1973); prisoner on work detail beyond confines of facility was in custody, Giles v. United States, 157 F.2d 588 (9th Cir. 1946); prisoner taken to hospital was in custody, Tucker v. UnitedStates, 251 F.2d 794 (9th Cir. 1958). In another escape case, Pinchon,supra, the defendant was determined to be in custody of prison officials although beyond confines of the prison while on a volleyball excursion.
At first glance it appears that for purposes of supporting an escape charge the court entertains a broad meaning to custody/ imprisonment, while for purposes of determining credit for time served on a sentence the court narrows the meaning. The resolution to this apparent dilemma is found in "the common thread" referred to in Pritchett and Meredith: the intent on the part of prison officials to exercise actual or constructive control of the prisoner and that in some manner the prisoner's liberty be restrained. In each of the escape cases the prison or jailing officials intended to exercise control, actual or constructive, over the prisoner; in those cases there was no intent to abandon or give up the prisoner, leaving him free to go his own way. In addition, the prisoner's liberty was restrained in some manner prior to his unauthorized departure. In the direct DUI imprisonment cases law enforcement officials abandoned any intent to exercise either actual or constructive control over the defendants, albeit the defendants' liberty was restrained in some manner.
Consistent with that "common thread," for purposes of DUI imprisonment Attorney General Opinion No. 83-123 sanctioned confinement in a gymnasium or armory where it was made clear to offenders that they could not come and go as they pleased and that to leave would result in more strict penalties by the court. The opinion noted that "restrictions on individual liberty which are imposed by a court, even if not a total deprivation, have been widely held to constitute imprisonment." (p. 3) In addition, Attorney General Opinion No. 92-2 approved for DUI imprisonment purposes the restrained environment of a weekend intervention program at a restricted area in a hospital where the offender remained under the custody and control of law enforcement officials. Finally, disapproving a weekend hospital intervention program which had no formal relationship with the courts or law enforcement officials, Attorney General Opinion No. 93-20 opined:
 "To satisfy the mandatory imprisonment requirements imposed by K.S.A. 8-1567, the individual must be in custody. Providing private security guards in a hospital setting is not sufficient in and of itself to meet this requirement; however, constant surveillance by law enforcement officials in a jail is not required either. The determining factor is the intent of the court and law enforcement officials to retain custody and control of the prisoner."
For the reasons expressed above on pages 4-5 in the discussion of the new statutory definition of DUI imprisonment, in our opinion the contractual arrangement between the city and the county with HAI satisfies the "common thread" requirement of intent to exercise actual or constructive custody while providing a manner of restraint of the offender's liberty.
We caution the city of Hutchinson and the county of Reno that this opinion has addressed only the question asked by the city attorney and the county counselor and is therefore limited to the issue of the meaning of the term "imprisonment" as used in the DUI and DWS statutes. Other possibly relevant issues such as potential liability of the city and county, employer-employee relations and federal funding of jails required to meet federal standards have not been addressed in this opinion.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General
RTS:JLM:CN:bas