NOT DESIGNATED FOR PUBLICATION

No. 118,513

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TERRAL E. BROWN SR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed December 14, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

PER CURIAM: A jury convicted Terral E. Brown Sr. of aggravated escape from custody. Brown appeals, challenging the sufficiency of the evidence and the trial court's failure to give two jury instructions he requested. For the reasons below, we hold there was sufficient evidence and no error in the instructions given. The trial court's judgment is affirmed.

In July 2016, a Sedgwick County District Court sentenced Brown to 12 months in jail for felony domestic battery. The sentencing court also recommended Brown serve his

1

time in the Sedgwick County Work Release Center. The sentencing court further ordered that, "if accepted, defendant is to abide by the recommendations" of that program.

On August 10, 2016, Brown was admitted to the Sedgwick County Work Release Facility. The Sedgwick County Work Release Facility is run by the Sedgwick County Sheriff. At the facility, James Rohr, Brown's work release coordinator, explained to Brown the logistics and rules of the work release program. One of the rules Rohr explained to Brown was "[f]ailure to return to the Facility will be deemed as an escape from custody and inmates will be subject to prosecution." Brown signed a form acknowledging that he read and understood the rules and regulations of the work release facility.

On November 29, 2016, Brown asked detention deputy Lenita Russell for permission to leave the work release center for a reason other than work. Russell told Brown to ask Rohr, and Rohr approved Brown's request for temporary leave. Russell told Brown that he must follow particular instructions while on leave. Specifically, Russell told Brown he must call in as soon as he arrived, call in every hour while he was still there, and needed to call before he left to return to the center. Brown left the work release center at around 9 a.m. on November 29, 2016, and never phoned or returned to the work release facility.

On January 5, 2017, the State charged Brown with aggravated escape from custody and issued an arrest warrant. Authorities arrested Brown on March 17, 2017. Brown pled not guilty to the charge of aggravated escape from custody and the case went to a jury trial.

The parties disagreed over jury instructions. The State sought the PIK Crim. 4th 59.080 jury instruction on aggravated escape from custody. That instruction stated:

2

"The defendant is charged with aggravated escape from custody. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved.

"1. The defendant was being held in custody on a conviction of a felony.

"2. The defendant failed to return to custody following a temporary leave lawfully     granted or ordered by a court.

"3. The defendant did so intentionally.

"4. This act occurred on or about the 29th day of November, 2016, in Sedgwick County, Kansas."

Brown sought to modify element 2 of the PIK instruction to read: "2. The defendant failed to return to custody following a temporary leave lawfully granted *pursuant to express authorization of law* or order of a court." (Emphasis added.)

Brown argued that his proposed instruction better mirrors the statute governing aggravated escape from custody. At the time Brown left the work release center, K.S.A. 2015 Supp. 21-5911(d)(2) defined "escape" as "departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court."

The trial court heard arguments from the parties on the proposed jury instructions on the first day of the trial. The State opposed Brown's proposed changes, noting caselaw favored PIK instructions over court-created instructions. Brown maintained that the jury needed the more detailed instruction because the jury could conclude that permission from the Sedgwick County Work Release Facility for Brown to leave was not leave lawfully granted pursuant to express authorization of law or order of a court. Brown maintained his leave was neither court-ordered nor expressly authorized by law. The State pointed out that this was a question of law, not a question of fact, and should not be a question for the jury. The State complained that Brown raised this legal question in the form of a proposed jury instruction submitted the day before the jury trial began which

3

took away the State's opportunity to brief the legal question. The trial court agreed this issue should have been raised at the pretrial hearing as there was not sufficient time to hear arguments and decide this matter on the morning the jury trial was to start.

The court heard arguments a second time on this instruction the following morning. Brown argued that if he was lawfully permitted to leave under the administrative authority of the sheriff's office, then he could not be convicted under the escape statute. Brown distinguished this case from *State v. Waid*, No. 112,559, 2016 WL 938111 (Kan. App. 2016) (unpublished opinion), because in *Waid*, the court, in its journal entry of sentencing, specifically ordered Waid to comply with the rules and regulations of the work release facility. In contrast, Brown points out his order, in regard to the work release program, required him to "abide by the recommendations." Brown argued that a recommendation is not the same as a rule or regulation. The trial court again noted that this seemed to be more of a legal issue than a factual issue. Additionally, the trial court stated it read the "recommendations" language as the sentencing court casting a wider net, in effect, encompassing rules and regulations as well as recommendations. The trial court opted to give the PIK instruction without the suggested modification.

Brown also sought a jury instruction on voluntariness. Specifically, Brown wanted the court to instruct the jury that "[a] person commits a crime only if such person voluntarily engages in such conduct, including an act or an omission." Brown argued that while PIK Crim. 4th omitted the instruction, PIK Crim. 3d gave an instruction about voluntariness. Brown suggested the court should still give the voluntariness instruction to fully inform on what the statute requires and to err on the side of caution. The trial court declined to give the voluntariness instruction because nothing suggested voluntariness was at issue in the case and caselaw favors use of PIK instructions.

At trial, the State introduced testimony from Russell, Rohr, and another detention deputy named Ashley Moore. Rohr testified that he informed Brown of the work release

4

center rules, and that Brown signed the document indicating he understood those rules. Russell testified that she allowed Brown to leave for a valid nonwork reason, but Brown did not comply with her instructions about calling and did not return to the center before the end of her shift at 3 p.m. on November 29, 2016. Moore, who worked the second shift, testified that Brown did not return during her shift that ended at 11 p.m. on November 29, 2016. Rohr also testified that after Brown left the center the morning of November 29, 2016, he never returned, not even to pick up the personal property he left there. The parties stipulated to the fact that Brown was in custody for a felony conviction.

Brown moved for a judgment of acquittal at the close of the State's case. He again pointed out the Sedgwick County Sheriff's Office, which is not a community corrections program, administers the Sedgwick County Work Release Program. He argued that meant Brown's temporary leave was not authorized "expressly by law or court order." The trial court denied Brown's motion. Brown rested without putting on any evidence.

The jury found Brown guilty of aggravated escape from custody and the trial court sentenced Brown to 23 months in prison. Brown timely appealed.

*Sufficiency of the Evidence*

Brown first argues that the State failed to submit sufficient evidence to support his conviction. When a party challenges the sufficiency of the evidence, the standard of review is "whether, after reviewing all of the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014).

Brown asserts that the State did not submit sufficient evidence to convince a jury that he "escaped" as defined by the relevant statute. The aggravated escape from custody statute in effect at the time Brown left the work release facility defined "escape" as "departure from custody without lawful authority or failure to return to custody following temporary leave lawfully granted pursuant to express authorization of law or order of a court." K.S.A. 2015 Supp. 21-5911(d)(2).

Brown argues that the State failed to admit sufficient evidence that his temporary leave was lawfully granted "pursuant to express authorization of law or order of a court." Since he did not fail to return from leave that was "lawfully granted pursuant to express authorization of law or order of a court," Brown reasons he did not commit escape as defined by the statute under which he was charged.

The State responds that it admitted sufficient evidence to sustain Brown's conviction. The journal entry of sentencing setting forth the felony sentence Brown was serving at the work release center was admitted as evidence. It sentenced him to serve his time in jail but then recommended Brown serve the time in the work release program. If he was accepted, Brown was to "abide by recommendations of the program." The Sedgwick County Work Release Center is administered by the Sedgwick County Sheriff. The Sedgwick County Sheriff dictates the rules and regulations of the work release center. A court must authorize a prisoner to be considered for work release; the sheriff will not allow a prisoner to serve time in the work release center instead of the jail unless it has been authorized by a court. In addition, Brown signed the work release center rules, indicating he understood and agreed to follow them. One of the rules stated: "Failure to return to the Facility will be deemed as an escape from custody and inmates will be subject to prosecution."

The issue in this case is whether the temporary leave that was granted constitutes leave "granted pursuant to express authorization of law or order of a court" under K.S.A.

6

2015 Supp. 21-5911(d)(2). A secondary issue is whether a court order allowing the defendant to serve his or her time in a work release program instead of jail but then specifically directs the defendant to follow the "recommendations" of the work release program renders temporary leave granted by that program "court ordered." Because these are questions of statutory interpretation, this court has unlimited de novo review. *State v. Stafford*, 296 Kan. 25, 50, 290 P.3d 562 (2012).

This court recently addressed a similar case in *Waid*, 2016 WL 938111. There, Waid was sentenced to 12 months in the Johnson County Residential Center, a work release facility run by Johnson County, for a probation violation. One morning, Waid left for his approved job but did not return to the work release facility as scheduled that evening. Waid remained absent from the work release facility for four days. The State charged Waid with aggravated escape from custody and he was convicted of this offense. Waid appealed, arguing that "the evidence supporting his conviction was insufficient because the State failed to prove that his leave from the residential facility was 'pursuant to express authorization of law or order of a court.'" 2016 WL 938111, at *2.

Like the Sedgwick County Work Release Facility, the Johnson County Residential Center is operated primarily by the county, not the Kansas Department of Corrections. Waid argued that because the work release facility was run by the county and not the State, the facility was not governed by law as state facilities are. He further reasoned that because the facility was county run, K.S.A. 75-5267 authorized work release for people under Department of Corrections' custody and did not govern his work release. This court rejected Waid's argument, citing to our Supreme Court decision in *State v. Garrett*, 235 Kan. 768, 774-75, 684 P.2d 413 (1984). 2016 WL 938111, at *4. We find the reasoning in *Waid* persuasive and follow it in this case.

In order to convict Brown of aggravated escape from custody, the State had to prove that (1) Brown was in custody for a felony conviction; (2) Brown intentionally

7

failed to return from leave lawfully granted; and (3) he did so on November 29, 2016. See K.S.A. 2015 Supp. 21-5911(b). As to the first element, the parties stipulated to the fact that Brown was in custody for a felony conviction. In addition, no issue has been raised in regard to the sufficiency of the third element.

In regard to the second element, during closing, Brown acknowledged that he was granted a lawful reason to leave the Sedgwick County Work Release Facility. Brown's counsel said, "As far as the second element, you know, was my client granted a lawful reason to leave the facility November 29 of 2016? Again, we are not taking any issue with that." Moreover, Brown does not argue that the State failed to show he acted intentionally but does question whether Brown "failed to return from leave lawfully granted."

Brown's sentencing journal entry establishes he was to serve his time in custody of the Sedgwick County jail but was allowed to serve that time in the work release program—in other words, by court order he was allowed in the program. That order further directed Brown was to follow all "recommendations" of the work release program if he was allowed in that program. We agree with the trial court's finding that the "recommendations" language in the sentence encompasses rules and regulations of the work release program as well as recommendations of the program. Given the court's orders and the clear rules of the program Brown was given, it follows he was authorized to leave pursuant to the rules of the program (lawfully granted by express authorization of the law) and he was required to follow those rules by the court's order which allowed him to be placed in the program.

In sum, construing the evidence in the light most favorable to the prosecution, a reasonable fact-finder could conclude that Brown was guilty of aggravated escape from custody.

*Voluntariness Instruction*

Brown requested that the trial court give a jury instruction on voluntariness. Specifically, Brown sought an instruction that "[a] person commits a crime only if such person voluntarily engages in such conduct, including an act or an omission." The trial court did not give the instruction. Brown argues that this was a reversible error. We disagree.

Courts analyze jury instruction issues by applying a three-step process:

"(1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, i.e., whether the error can be deemed harmless." *State v. Williams*, 295 Kan. 506, 510, 286 P.3d 195 (2012).

Here, the parties agree that the issue is preserved for appeal because Brown requested the voluntariness instruction and was denied.

During the second step, this court employs an unlimited review of the entire record to determine whether a requested instruction was legally and factually appropriate. *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018). Brown claims the voluntariness instruction was both factually and legally appropriate. The State argues that the instruction was not factually appropriate and, thus, the analysis need not proceed to step three. We hold the State is correct.

To determine whether the facts support a requested instruction, this court considers whether "there was sufficient evidence, viewed in the light most favorable to the defendant . . . that would have supported the instruction." *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016). Brown produced no evidence at trial. He argues,

9

however, that a voluntariness instruction was factually appropriate because of a lack of evidence as to whether his failure to *return* was voluntary.

Brown cites to a Wyoming case, *Seymore v. State*, 2007 Wyo. 32, 152 P.3d 401, 406 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 2008 Wyo. 118, 193 P.3d 266 (2008), where, upon similar facts, the Wyoming Supreme Court remanded for a new trial because the jury was not given a voluntariness instruction. The Wyoming Supreme Court's analysis of Wyoming's laws is not binding on this court, and the case is distinguishable. There, the Wyoming Supreme Court's primary concern was that the trial court failed to instruct the jury as to any required mens rea whatsoever. 152 P.3d at 406-07. Here, the jury was specifically instructed that to find Brown guilty, it must find he intentionally committed aggravated escape. As the trial court noted here, there may indeed be some circumstances where someone acts intentionally but not voluntarily, but nothing in the facts suggests that was the case here. As a result, Brown's arguments are unconvincing.

Nothing in the facts at trial suggested Brown's failure to return was involuntary. The facts showed that Brown left the facility one day on approved leave but never checked in or returned. The absence of facts regarding voluntariness, without more, should not factually trigger a need for a voluntariness instruction. Further, as the State correctly noted below, no voluntariness instruction appears in the PIK Crim. 4th, the governing PIK at the time of Brown's trial. The PIK Crim. 4th omits the inference of intent instruction (52.290) that appeared in PIK Crim. 3d because "[t]he Committee recommends that no instruction be given because the concept is now incorporated in the definition of intentional conduct in PIK Crim. 4th 52.010." PIK Crim. 4th 52.290. The trial court here gave the appropriate intentional conduct pattern instruction. This is also supported by the general rule that a PIK instruction may be modified if particular facts in the case require such but "absent such need, PIK instructions and recommendations should be followed." *State v. Dixon*, 289 Kan. 46, Syl. ¶ 10, 209 P.3d 675 (2009).

10

In sum, because the instruction was not factually appropriate and caselaw disfavors straying from PIK unless necessary, the trial court's refusal to give a voluntariness instruction here was not error.

*Escape Instruction*

Brown also requested that the trial court modify the PIK jury instruction listing the elements of aggravated escape. The trial court declined to do so and instead gave a standard instruction based on that element from PIK Crim. 4th 59.080 as follows: "2. Mr. Brown failed to return to custody following a temporary leave lawfully granted or ordered by the court." The modification sought by Brown read: "2. The defendant failed to return to custody following a temporary leave lawfully granted *pursuant to express authorization of law* or order of a court." (Emphasis added.) "Pursuant to express authorization of law or order of a court" is taken directly from the statute defining escape. K.S.A. 2015 Supp. 21-5911(d)(2).

The three-step process for evaluating instructional error outlined from *Williams*, 295 Kan. at 510, has already been set forth above. On this issue, the parties agree that the issue is preserved for appeal because Brown's request for the instruction was denied. The State does not offer an argument against Brown's assertion that his proposed modification was legally and factually appropriate. When the issue is preserved and the instruction is legally and factually appropriate, this court must determine whether the error is harmless. To find an instructional error harmless, this court "must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, i.e., there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012).

11

The trial court has a duty, drawn from both the Kansas and United States Constitutions, to inform the jury of each essential element of the crime charged. *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014); *State v. Richardson*, 290 Kan. 176, Syl. ¶ 1, 224 P.3d 553 (2010). Brown asserts the failure to include the phrase "pursuant to express authorization of law" was a fundamental constitutional error because the trial court inaccurately instructed the jurors on the essential elements of the crime. He argues a jury could reasonably conclude the work release center only had "the authority in its discretion, not law, to grant [him] a temporary leave."

As pointed out above, the trial court gave the appropriate PIK instruction. Our Supreme Court jurisprudence heavily favors PIK instructions. In *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015), our Supreme Court wrote that it "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions. [Citation omitted.]"

Moreover, the defendant in *Waid* made the same argument, and this court rejected it. 2016 WL 938111, at *5. The *Waid* court found "that the defendant failed to return after temporary leave lawfully granted is not a separate and distinct element from 'pursuant to express authorization or order of a court.' Rather, the clause clarifies the phrase 'lawfully granted.'" 2016 WL 938111, at *5. The *Waid* decision is well reasoned and though not binding is instructive here. Because "pursuant to express authorization of law" is not a separate element of aggravated escape from custody, the trial court did not fail to instruct the jury on all the elements of the crime charged and the trial court did not violate Brown's constitutional right. From this we are "persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, i.e., there is no reasonable possibility" that any instructional error contributed to the verdict. See *Ward*, 292 Kan. at 565.

12

In sum, we hold there was sufficient evidence in this case to support Brown's conviction for aggravated escape from custody and there is no reasonable possibility that any instructional error contributed to the verdict.

Affirmed.