(193 P.3d 515)
No. 98,856

STATE OF KANSAS, *Appellant*, v. KRISTIE MARIE URBAN, *Appellee*.

Opinion filed October 10, 2008.

*Steven J. Obermeier*, assistant district attorney, *Phill Kline*, district attorney, and *Paul J. Morrison*, attorney general, for appellant.

*Janine Cox*, of Kansas Appellate Defender Office, for appellee.

Before MCANANY, P.J., BUSER and LEBEN, JJ.

LEBEN, J.: Kristie Urban was granted a personal recognizance (PR) bond subject to the condition that she go to the Johnson County Community Corrections Residential Center. After she failed to return to the facility while on a pass to visit her family, the State charged her with aggravated escape from custody. The district court dismissed the charge because it believed Urban's PR bond and placement at the facility did not fit the definition of custody under K.S.A. 21-3809(b)(1). But Urban's placement at the facility was not merely incidental to her PR bond, and her confinement there went beyond general supervision to the equivalent of incarceration. The district court erred in dismissing the aggravated escape charge, and we reverse the dismissal and remand the case for further proceedings.

I. *Urban Was in Custody While at the Residential Center.*

Urban claims that she was not "held in lawful custody . . . upon a charge or conviction of a felony" as required to charge aggravated escape. K.S.A. 21-3810(a). But K.S.A. 21-

3809(b)(1) defines custody for the purpose of the aggravated escape statute, and Urban met the test for custody found there. K.S.A. 21-3809(b)(1) defines two categories as custody that apply to Urban when she was at the Residential Center: (1) "detention in a facility for holding persons charged with or convicted of crimes" and (2) "detention in . . . [some] other facility pursuant to court order . . . imposed as a specific condition of assignment to a community correctional services program." The statute excludes from the custody definition restrictions that are "incidental to release on bail." But that exclusion doesn't apply to Urban because a requirement that a person reside in a custodial community corrections facility is not an "incidental" or minor restriction.

We must focus on the words of the statute, K.S.A. 21-3809(b)(1). We quote it in full for context but note that it consists of two sentences. The first sentence defines situations in which a person is in custody; the second sentence defines situations in which a person is not in custody:

" 'Custody' means arrest; detention in a facility for holding persons charged with or convicted of crimes or charged or adjudicated as a juvenile offender, as defined in K.S.A. 2007 Supp. 38-2302, and amendments thereto, where the act, if committed by an adult, would constitute a misdemeanor; detention in a facility for holding persons adjudicated as juvenile offenders; detention for extradition or deportation; detention in a hospital or other facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program; commitment to the state security hospital as provided in K.S.A. 22-3428 and amendments thereto; or any other detention for law enforcement purposes. 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail." K.S.A. 21-3809(b)(1).

As we will see, it's quite clear that Urban's situation is covered by the first sentence, which suggests that she was in custody. The debate in our case is about whether her situation is also covered by the second sentence, which would suggest she was not.

A. *The First Sentence of K.S.A. 21-3809(b)(1) and Kansas Supreme Court Caselaw Clearly Demonstrate that Urban Was in Custody.*

Let's take first things first: was Urban in custody under the first sentence? Two provisions seem to apply. She was in "detention in

a facility for holding persons charged with or convicted of crimes" and she was in "detention in a hospital or other facility pursuant to court order . . . imposed as a specific condition of assignment to a community correctional services program." Indeed, a Kansas Supreme Court case confirms our reading that these statutory provisions apply to Urban's case.

In that case, *State v. Garrett*, 235 Kan. 768, 684 P.2d 413 (1984), the defendant was charged with aggravated escape after he left Sedgwick County's residential community corrections center. The court concluded that he "was being detained in a facility for holding persons convicted of crimes and was also being detained in a facility pursuant to court order." 235 Kan. at 774. Thus, the court held that it was aggravated escape when "a convicted felon who, without permission and in violation of the rules, departs from a community corrections facility or fails to return following temporary leave lawfully granted." 235 Kan. at 775.

The only factual difference between *Garrett* and Urban's case is that Garrett had already been sentenced, while Urban had not. This distinction is of no legal significance. First, K.S.A. 21-3809(b)(1) defines "detention in a facility" with respect either to "persons charged with *or* convicted of crimes." (Emphasis added.) Thus, Urban was in custody so long as she was charged with a crime while detained in a facility under that statute. The *Garrett* court held that a residential community corrections center is such a facility, and that holding applies whether Urban was already convicted or merely charged. Second, the *Garrett* court also held that a residential center is an "other facility" under the statute, and Urban was there pursuant to court order; that holding also applies whether Urban was already convicted or merely charged. For that matter, a person cannot be admitted to a community corrections program without a court order. Third, Urban had already been convicted because she had pled guilty and been found guilty on January 2, 2007, 6 weeks before she left the residential center on a pass and failed to return. A defendant is convicted at the time a plea is accepted and the defendant is found guilty. K.S.A. 21-3110(4); *State v. Pollard*, 273 Kan. 706, 712-13, 44 P.3d 1261 (2002); *State v. Holmes*, 222 Kan. 212, Syl. ¶ 1, 563 P.2d 480

(1977); *Thompson v. State*, 32 Kan. App. 2d 1259, Syl. ¶ 2, 96 P.3d 1115 (2004), *rev. denied* 278 Kan. 852 (2005). Thus, Urban cannot viably distinguish *Garrett* and its teaching that a convicted felon commits aggravated escape if he or she fails to return to a residential community corrections center after going out on temporary leave. See also *State v. Kraft*, 38 Kan. App. 2d 215, 163 P.3d 361, *rev. denied* 285 Kan. 1176 (2007) (the defendant on house arrest as the first phase of conditional release from residential community corrections program was in custody for purposes of aggravated-escape charge).

B. *The Second Sentence of K.S.A. 21-3809(b)(1) Demonstrates that Urban Was in Custody by the Rules of Statutory Interpretation.*

We still must consider whether Urban's situation is covered by the second sentence of K.S.A. 21-3809(b)(1). That sentence lays out exclusions to the definition of custody, which does not include "general supervision of a person on probation or parole" or "constraint *incidental to* release on bail." (Emphasis added.) Urban argues that her placement at a residential facility was a constraint that was incidental to her PR bond. If that were so, she would not have been in custody and would not be subject to a charge for aggravated escape from custody.

But principles of statutory interpretation rebut Urban's argument. Whether we apply *ejusdem generis* (interpret words or phrases of the same kind or nature similarly) or *noscitur a sociis* (words are known by their associates), the two parts to the second sentence of K.S.A. 21-3809(b)(1) should be interpreted similarly. The first portion excludes "general supervision of a person on probation or parole." Thus, mere "general supervision" of a person is not custody for someone who was already sentenced and placed either on probation (before a sentence is served) or parole (after a sentence has been served). General supervision would include things such as: regular reporting to a parole or probation officer, random drug testing, or informing officials of any change of address. But surely someone who resides at a community corrections facility is not *just* under "general supervision." Similarly, the phrase "constraint incidental to *release* on bail" suggests the person has

been released rather than kept in something equivalent to incarceration and for which jail-time credit is required. And the use of the term "incidental" suggests something minor, certainly less than incarceration or its equivalent.

Indeed, Urban tries to argue for an interpretation of the word "incidental" that flies in the face of its accepted meaning. Black's Law Dictionary defines it as "[s]ubordinate to something of greater importance" or "having a minor role." Black's Law Dictionary 777 (8th ed. 2004). The American Heritage Dictionary defines incidental as "[o]ccurring or likely to occur as an unpredictable or minor accompaniment" or "[o]f a minor, casual, or subordinate nature," as in incidental expenses. American Heritage Dictionary 886 (4th ed. 2006). The requirement to be in "residence" at a community corrections facility is not a minor matter. Urban was accordingly given jail-time credit against her sentence in the drug-possession case for the time she spent in residence there, just as the legislature has provided for in K.S.A. 21-4614a.

Urban's argument confuses the phrases "incidental to" and "incident to," even though they do not mean the same thing. A person may be asked his name *incidental to* arrest and that may be a relatively minor matter. But the person may be subject to a search *incident to* arrest even though that search may be quite extensive, intrusive, and significant. When used as an adjective, "incident" simply means something "[t]ending to arise or occur as a result or accompaniment" or something "[r]elated to or dependent on another thing." American Heritage Dictionary 886. That definition is different than the meaning of "incidental," which is the word used in this statute. As Bryan Garner has explained, "incident to" means "closely related to" or "naturally appearing with," while "incidental to" means "happening by chance and subordinate to some other thing; peripheral." Garner, *Garner's Modern American Usage* 439 (2d ed. 2003). We believe the legislature correctly used "incidental to" in this statute to refer to a subordinate, peripheral, or minor accompaniment to release on bail.

So the first portion of the exclusionary sentence in K.S.A. 21-3809(b)(1) would not exempt a person in residence at a community corrections facility from the definition of custody. The first portion

applies only after a person has been sentenced because the defendant could not otherwise be on either probation or parole. The second part of the sentence, "constraint incidental to release on bail," can apply even before the person has been sentenced. But the second part of the sentence is not meant to have any broader application. "Constraint incidental to release on bail" should be considered roughly equivalent to "general supervision" because words of the same type should be interpreted in a similar way just as a word should be known by its associates. This interpretation makes sense given that "general supervision" is relatively minor as compared to incarceration.

Under Urban's argument, *all* limitations added as a condition of bail would be deemed a "constraint incidental to release on bail" and would be excluded from the definition of custody. For example, if the judge had not only said that Urban must stay at the residential center but had also added that she could *never* receive a day pass to leave the center briefly, she would still not be in custody under the defendant's argument. That would not be a reasonable interpretation of this statute.

II. *We Do Not Find Our Court's Prior Decision in* Hampton *Persuasive or Controlling.*

We recognize that there is an unpublished decision of a panel of our court that is contrary to the ruling we are making. In *State v. Hampton*, No. 91,092, unpublished opinion filed September 24, 2004, a panel concluded that a person who left the Johnson County Residential Center without permission while there on felony bond could not be charged with aggravated escape.

We first note that there is a potentially significant factual difference between *Hampton* and Urban's case—Hampton had not yet pled and been convicted, while Urban had. *Hampton* could be distinguished on that basis. But we do not believe that difference is of importance because "detention in [some] other facility pursuant to court order" is included in the definition of custody whether a person has been convicted or not. In addition, the definition of custody includes "detention in a facility for holding persons charged with or convicted of crimes," again making clear that

conviction is not required for custody status. See K.S.A. 21-3809(b)(1).

Upon review, we do not find the analysis in *Hampton* persuasive, but we find the *Garrett* decision quite persuasive. *Hampton* distinguished *Garrett* because "Garrett had been convicted on the underlying crime prior to being ordered to the community corrections" residential center, but Hampton had not been. The *Hampton* opinion does not discuss one portion of K.S.A. 21-3809(b)(1) for which conviction is not required—"detention in [some] other facility pursuant to court order"—and which *Garrett* had applied to Sedgwick County's community corrections residential center. Nor does the *Hampton* opinion discuss the meaning either of "incidental" or "incidental to." Rather, it concludes from the exclusion from custody of a "constraint incidental to release on bail" that "it appears clear that the legislature did not intend to include walking away from a community corrections residential center before conviction and while on bond to be an aggravated escape from custody as opposed to bail jumping." Slip op. at 11. We find our analysis of the *Garrett* holding and of the statute more persuasive in deciding Urban's case than the holding in *Hampton*.

In any case, we are not bound by the decision of a previous panel of our court. The ability of panels of our court to disagree on legal issues is recognized in one of the statutory provisions enacted when our court was created. K.S.A. 20-3018(b) explicitly provides that a conflict between the decision of two panels of our court is one basis for the Supreme Court to exercise its discretionary review of our opinions. Because one panel of our court has no greater power than another, we may not "disapprove" a past decision and thus remove whatever precedential value it may have. *In re Marriage of Cray*, 254 Kan. 376, Syl. ¶ 1, 867 P.2d 291 (1994); *cf. State v. Heffelman*, 256 Kan. 384, 387-94, 886 P.2d 823 (1994) (citing *Cray* but agreeing with Court of Appeals panel that had disagreed with prior panel opinion); *State v. Moody*, 282 Kan. 181, 144 P.3d 612 (2006) (agreeing with Court of Appeals panel that had disagreed with prior panel opinion); see also 282 Kan. l-lxxvi (containing list of cases overruled or "disapproved" by the Kansas Supreme Court). But while we must carefully consider each precedent cited

to us, we also must uphold our duty to correctly determine the law in each case. In doing so, we sometimes find that we must respectfully disagree with the opinion of another panel.

### Conclusion

Based upon our analysis of the words used by the legislature, we do not find any indication that the legislature meant to exclude persons sent to a community corrections residential center from the statutory definition of custody. Based in part on *Hampton*, the district court dismissed the aggravated escape charge against Urban. We reverse that dismissal and remand the case for further proceedings.