No. 98,856

STATE OF KANSAS, *Appellant*, v. KRISTI MARIE URBAN, *Appellee*.

(239 P.3d 837)

Opinion filed September 24, 2010. Judgment of the Court of Appeals reversing and remanding to the district court is reversed. Judgment of the district court is affirmed.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Phill Kline*, district attorney, and *Paul J. Morrison*, attorney general, were with him on the brief for appellant.

*Janine Cox*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Kristi Marie Urban petitioned this court for review of a Court of Appeals decision reversing a district court dismissal of this aggravated escape prosecution. Urban argues that the appellate panel should have followed the K.S.A. 21-3809(b)(1) interpretation in *State v. Hampton*, No. 91,092, a different panel's earlier unpublished opinion. The State's principal argument is that an unpublished opinion should not be treated as controlling precedent.

## FACTUAL AND PROCEDURAL BACKGROUND

Urban was charged in Case No. 06CR2179 with several counts of drug possession and driving while suspended. Pending trial or plea, the district judge granted her a personal recognizance (PR) bond on the condition that she reside at the Johnson County Residential Center (Center). The judge specifically imposed the residential condition on the PR bond after Urban twice failed to appear as ordered in the case. Urban posted bond on December 28, 2006, and was transferred to the Center. Thereafter, Urban reached a plea agreement with the State; the parties agree she entered her guilty plea on January 2, 2007, and her sentencing was set for February 28, 2007.

Before that date arrived, on February 16, 2007, Urban left the Center on a temporary pass and failed to return, remaining missing until March 26, 2007. As a result, she again failed to appear as ordered in Case No. 06CR217. The State brought this case on February 23, 2007, charging Urban with aggravated escape from custody under K.S.A. 21-3810.

Urban was sentenced on Case No. 06CR2179 on April 19, 2007. She received 18 months' probation at the Center, with an underlying prison term of 15 months. She received jail credit for her time already spent at the Center, less the time she had been missing.

Urban moved to dismiss the aggravated escape charge on the theory that she was not in custody, as that term is defined in K.S.A. 21-3809(b)(1), at the time she left the Center on her temporary pass. She argued that her restraint at the Center was incidental to

her release on bond in Case No. 06CR2179, and that release on bond was excluded from the statutory definition of custody.

The district judge granted Urban's motion. He noted that, at the time of Urban's plea, the court could have revoked Urban's pre-plea conditional bond and placed her at the Center to await sentencing. It did not. Consequently, he agreed with Urban that she had not been in custody within the contemplation of K.S.A. 21-3809(b)(1) when she left the Center on her temporary pass.

The Court of Appeals panel rejected this position. *State v. Urban*, 40 Kan. App. 2d 517, 193 P.3d 515 (2008). We granted review under K.S.A. 20-3018(b).

ANALYSIS

### A. Standard of Review

Interpretation of a statute raises a question of law over which this court has unlimited review. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained. *Arnett*, 290 Kan. at 47. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009). This court cannot delete vital provisions or supply vital omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct. See *State v. Johnson*, 289 Kan. 870, 879, 218 P.3d 46 (2009).

## B. *Statute at Issue*

The controlling statute is K.S.A. 21-3809(b)(1), which contains pertinent descriptions of what "custody" is and what it is not, when that term is used to define the crimes of escape, aggravated escape, and aiding escape. The statute, in the form it existed when Urban was charged through today, provides:

" 'Custody' means . . . detention in a facility for holding persons charged with or convicted of crimes . . .; detention in . . . [another] facility pursuant to court order, imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program . . . . 'Custody' does not include general supervision of a person on probation or parole or constraint incidental to release on bail."

## C. *The Court of Appeals Decision in this Case*

After reviewing the statutory language, the Court of Appeals panel held that Urban's circumstances fit two of the three scenarios described in the first sentence quoted above: She was in detention in a facility for holding persons convicted of crimes, and she was in detention in a facility pursuant to court order imposed as a specific condition of assignment to a community correctional services program. In contrast, in the panel's view, Urban's situation did not fit either of the scenarios described in the second sentence of K.S.A. 21-3809(b)(1): Her detention was not general supervision of a person on probation or parole, and it was not a constraint incidental to release on bail. *Urban*, 40 Kan. App. 2d at 521-23. Thus Urban was in "custody" for purposes of the aggravated escape charge.

The Court of Appeals panel in this case relied in part on our 1984 decision in *State v. Garrett*, 235 Kan. 768, 684 P.2d 413 (1984). Defendant David D. Garrett had been convicted of forgery and was initially given a 3-year suspended sentence. When he failed to comply with the terms of his suspended sentence, the district court at first set aside the sentence and committed him to 1 to 10 years' imprisonment. Upon a defense motion to modify, the judge placed Garrett on probation for 3 years, on the condition that he reside at a community corrections facility. Garrett failed to return

as scheduled when permitted to leave the facility, and the State charged him with escape.

At the time Garrett was charged with escape, the first sentence of K.S.A. 21-3809(b)(1) was similar but not identical to its current form. The statute then provided that " '[c]ustody' means . . . detention in a facility for holding persons charged with or convicted of crimes, . . . detention in . . . [another] facility pursuant to court order *or* imposed as a specific condition of probation or parole . . . ." (Emphasis added.) *Garrett*, 235 Kan. at 771 (quoting K.S.A. 1983 Supp. 21-3809[b][1]; see also L. 1986, ch. 123, sec. 1 (showing timing, content of statutory amendment). Under the plain language of this earlier version of the statute, and particularly the disjunctive "or" emphasized above, the definition of "custody" was met if a defendant had been detained pursuant to a court order of any kind. It was not necessary, as it was when Urban was charged with aggravated escape, and as it is now, that a court order be "imposed as a specific condition of probation or parole or imposed as a specific condition of assignment to a community correctional services program." See K.S.A. 21-3809(b)(1).

In the *Garrett* decision, the first legal issue we addressed was whether Garrett's residence in the community corrections center qualified under one or more of the scenarios set out in the first sentence of K.S.A. 1983 Supp. 21-3809(b)(1). We held that Garrett was in custody because "[h]e was being detained in a facility for holding persons convicted of crimes and was also being detained in a facility pursuant to court order." *Garrett*, 235 Kan. at 774. We did not address whether either of the exceptions to "custody" in the second sentence of K.S.A. 1983 Supp. 21-3809(b)(1) applied, an issue apparently not raised. See *Garrett*, 235 Kan. at 774-76.

The Court of Appeals panel in this case concluded that Urban—who, like Garrett, had already been convicted but, unlike Garrett, had not been sentenced when she left community corrections—was covered two ways by the first sentence of K.S.A. 21-3809(b)(1): She was detained in a facility for persons convicted of crimes, and she was detained in a facility pursuant to court order imposed as a specific condition of assignment to a community correctional services program. *Urban*, 40 Kan. App. 2d at 518-19. Because of the

amendment to the statute between the time *Garrett* was decided and the time Urban was charged, *Garrett* supports the former holding but not the latter. We therefore hold, when only the first sentence of K.S.A. 21-3809(b)(1) is considered, Urban's situation qualifies for the label of custody because she was in "detention in a facility for holding persons . . . convicted of crimes."

The Court of Appeals panel in this case correctly discerned that our analysis must now move to the second sentence of K.S.A. 21-3809(b)(1). See *Urban*, 40 Kan. App. 2d at 520. Its two exceptions to the definition of custody in the first sentence have been identical since 1982. Compare L. 1982, ch. 134, sec. 1 with K.S.A. 21-3809(b)(1). And the clear import of the two sentences, when read together, is that applicability of one or both of the exceptions in the second sentence trumps applicability of one or more of the custody scenarios outlined in the first sentence.

The first exception is easily disposed of. It would apply only if Urban were under general supervision on probation or parole. As she had only been convicted and not sentenced, neither probation nor parole were yet in play.

The second exception is the sticking point. Urban asserts that this exception for persons subject to "constraint incidental to release on bail" applies to her because her residence at the Center was a condition of her PR bond, instituted pending trial or plea and never revoked or adjusted at her plea hearing or otherwise. We do not have a transcript of the plea hearing in Case No. 06CR2179 in the record on appeal in this case, but the State has not disputed the district judge's mention that Urban's bond was not revoked or, apparently, otherwise explicitly changed when she pleaded guilty in the drug case.

The Court of Appeals panel rested its conclusion that the second exception did not apply to Urban on several grounds. It invoked two canons of statutory construction, *ejusdem generis* and *noscitur a sociis*, to say that the two exceptions should be "interpreted" to make them equivalent in their relatively low impact on a defendant. It also read the phrase "incidental to" to mean that any constraint referred to in the second exception be minor, *i.e.*, less restrictive than the residence at the community corrections Center here. The

panel noted that Urban had received jail credit for her time at the Center, less the time she was missing. It also characterized exclusion of any condition placed on bail or bond from the definition of custody in the first sentence of K.S.A. 21-3809(b)(1) as an unreasonable "interpretation" of the statute. *Urban*, 40 Kan. App. 2d at 520-22.

We depart from the panel on its first ground because it requires us to exceed our role when faced with a statute whose language is clear and unambiguous. As we have often stated, it is not the place of a court to look beyond such language for evidence of legislative intent. When a statute is plain, the court should not speculate as to the legislative intent behind it and should not read into the statute something not readily found in it. In this case, there was no need here to go beyond statutory interpretation to statutory construction, employing canons, or searching for clues in legislative history or other background considerations. The legislature's intent in choosing the words it used in the second exception in the second sentence of the statute is manifest. "Constraint" is a broad term; it may be more intrusive than detention or less. Bail has a specific meaning, but it includes a PR bond such as that posted by Urban. The "release" in the phrase "release on bail" is release from jail; required residence in a community corrections facility may not be total freedom, but it is still not jail.

We also disagree with the panel's second ground, the gloss it gives the phrase "incidental to." Although it is true that "incidental to" has developed a modern usage subtly differentiated from "incident to," both phrases imply that the preceding concept is subordinate in some way to the succeeding concept. Compare Garner, *Garner's Modern American Usage* 439 (2d ed. 2003) with Black's Law Dictionary 777 (8th ed. 2004). The legislature's employment of "incidental" rather than "incident" does not necessarily trivialize "constraint" in a cosmic sense. It does not make "constraint" irrelevant, as "spectacle" does to "shopping" in Garner's exemplary sentence: "Inside a Niketown or REI store in Seattle, shopping seems incidental to the spectacle . . . ." *Garner's* at 439 (quoting Kugiya, *What's in Store?* Seattle Times, October 19, 1997, at 16). Rather, it precisely conveys, just as "incident to" conveys, the re-

lationship between "constraint" and "release on bail." The relationship is dependence; the constraint arises out of the bail context.

Third, we are unpersuaded that there is anything unreasonable about an interpretation of the statutory language that makes every constraint incidental to release on bail ineligible for the label of "custody" under K.S.A. 21-3809(b)(1). This was the legislature's policy choice to make, and it made it. It is not so farfetched that we must recoil or darn its socks. The exception to custody for "constraint incidental to release on bail," in fact, is consistent with the overall legislative design that makes walking away from a community corrections facility while on bond a separate offense. See K.S.A. 21-3814. If the legislature believes it has been misunderstood, we are confident that an appropriate amendment of the statutory language will follow publication of this opinion.

Finally, we agree with Urban's counsel that the Court of Appeals' note about Urban receiving jail credit for her time at the Center, less the time while she was missing, is irrelevant. The propriety of awarding jail credit in such a situation is a matter for another court on another day. The Court of Appeals did not appear to put great weight on this fact here, much less reason backward from it to its result; we comment only to ensure that our silence now is not misinterpreted in the future as approval.

### D. *The Significance of Hampton*

The final section of the Court of Appeals decision in this case is reserved for its discussion and dismissal of *State v. Hampton*, No. 91,092, an unpublished opinion filed by another Court of Appeals panel on September 24, 2004.

In that case, defendant Andrew A. Hampton, who had been charged but not convicted in a felony prosecution and who was on a $10,000 personal recognizance bond, was released to a community corrections residential facility. When he left the facility and failed to return, he was charged with and pleaded guilty to aggravated escape.

Five years later, Hampton argued that he should be permitted to withdraw his plea because he had not been in the "custody" necessary to support the aggravated escape charge. The Court of

Appeals panel agreed with his argument on the factual impossibility of an aggravated escape. See *Hampton,* slip op. at 16-17.

"Custody as defined in 21-3809(b)(1) does not include actions which are a part of general supervision of a person on parole or probation or constraint incidental to release on bail. By this definition, it appears clear that the legislature did not intend to include walking away from a community corrections residential center before conviction and while on bond to be an aggravated escape from custody as opposed to bail jumping. The legislature could have included such a walk away as escape or aggravated escape, but it has not done so." *Hampton,* slip op. at 11.

The Court of Appeals panel in this case first pointed out a factual distinction between Urban and Hampton, *i.e.,* that Urban had been convicted while Hampton had not; but it acknowledged that such a distinction was of no moment under the first sentence of K.S.A. 21-3908(b)(1). It also said that it found *Hampton* less helpful than *Garrett,* because it did not discuss the "court order" section of the first sentence of the statute while *Garrett* did. *Urban,* 40 Kan. App. 2d at 522-23. As we have discussed in the preceding section, *Garrett* focused on an earlier version of the statutory language on detention pursuant to court order, and that makes its pronouncements on that language of little use. Although the Court of Appeals panel also criticized *Hampton*'s lack of discussion of the meaning of "incidental to," *Garrett* also did not discuss this wording choice, or, for that matter, anything related to the second sentence of K.S.A. 21-3809(b)(1).

The main problem with the Court of Appeals panel's discussion of *Hampton* is that it ignored the critical factual similarity between Urban and Hampton. Each was on felony bond at the time of the charged escape. Unlike conviction status under the first sentence of K.S.A. 21-3809(b)(1), the existence of each bond and the relationship between it and the residential constraint placed on the defendant under the second sentence of K.S.A. 21-3809(b)(1) has dispositive legal significance. Each defendant was subject to detention that could qualify as "custody" under the first sentence of K.S.A. 21-3809(b)(1), but the bond and the constraint incidental to it excluded each defendant's situation under the second sentence of the statute. As a result, neither Hampton nor Urban could be charged with aggravated escape.

Finally, we must comment on the *stare decisis* value of *Hampton*.

The Court of Appeals panel was correct that it had the right to disagree with a previous panel of the same court. See K.S.A. 20-3018(b) (Supreme Court may review Court of Appeals decision when in conflict with another). And the State is correct that unpublished decisions are generally afforded little precedential authority; indeed, they are not to be cited to a court unless they are significant for issue or claim preclusion or for law of the case or there is no published case on the same point of law. See Supreme Court Rule 7.04(f)(2) (2009 Kan. Ct. R. Annot. 54). We are not compelled today, and the district court was not compelled when it dismissed Urban's charge for aggravated escape, to decide this case as we do because of the *Hampton* decision. Rather, our result is demanded by the plain language of the governing statute. *Hampton* is merely persuasive authority arising out of factually similar circumstances. We read it, as always, with interest and respect; but we are not bound to follow it.

The Court of Appeals is reversed. The district court is affirmed.