NOT DESIGNATED FOR PUBLICATION

No. 113,865

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMON HUNTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed January 27, 2017. Affirmed in part and vacated in part.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., POWELL, J., and HEBERT, S.J.

*Per Curiam*: Raymon Hunter was convicted by a jury of his peers of two misdemeanor counts of violating a protection from abuse order. On appeal, he claims the district court erred in three ways: (1) by failing to include all the elements of these crimes in the jury instructions; (2) by designating his convictions as domestic violence offenses; and (3) by ordering him to reimburse the Board of Indigents' Defense Services (BIDS). While we agree with Hunter that the district court improperly designated his convictions as domestic violence offenses because such findings were within the province of the jury, we find no other error on the part of the district court. We therefore affirm Hunter's

1

convictions and sentences but vacate that portion of the district court's order designating his convictions as domestic violence offenses.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2014, the Reno County District Court issued a temporary protection from abuse order against Hunter, prohibiting him from contacting his ex-girlfriend or coming onto her property. A Reno County Sheriff's sergeant met and served someone who looked like Hunter with the order, after calling Hunter's phone number. The sergeant did not ask for identification but simply matched the person to a photo of Hunter attached to the order. Hunter apparently has an identical twin, however, and claimed he was never served with the order and never had an opportunity to read it. Hunter did admit to knowing about the order.

In March 2014, Hunter contacted his ex-girlfriend twice. The first time he went by her house so that she could see her dog. Unfortunately, the ex-girlfriend's new boyfriend was there, and he and Hunter eventually brawled. After the fight ended, Hunter left before police arrived. A week later, Hunter again contacted his ex-girlfriend and then went to her house when no one was there to get some of his belongings. As a result of these two incidents, the State charged him with three felonies—aggravated assault, battery, and criminal threat—and two misdemeanor counts of violating a protection from abuse order.

At trial, Hunter admitted to violating the protection from abuse order. Hunter also did not object to the district court's jury instructions setting forth the elements of the crime of violating a protection from abuse order as they were not significantly different than the instructions he proposed. Hunter was ultimately acquitted of the felony charges but convicted of the two misdemeanors charges of violating a protection from abuse order. The district court sentenced him to 24 months in jail but granted him probation for

2

12 months. The district court also ordered him to pay half of the BIDS fees calculated in the presentence investigation report. Finally, at the State's request and over his objection, the district court designated Hunter's convictions as domestic violence offenses and ordered him to complete a domestic violence assessment.

Hunter timely appeals.

### DID THE DISTRICT COURT ERR IN FAILING TO INSTRUCT THE JURY ON ALL ELEMENTS OF VIOLATING A PROTECTION FROM ABUSE ORDER?

Hunter first claims that the two elements instructions for each count of violating a protection from abuse order left out an element of the offense. We undertake a multistep process in reviewing jury instruction challenges.

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).""" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016) (quoting *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 [2015]).

"Violation of a protective order is knowingly violating . . . [a] protection from abuse order issued pursuant to K.S.A. 60-3105, 60-3106 or 60-3107, and amendments thereto." K.S.A. 2015 Supp. 21-5924(a)(1). According to Hunter, "pursuant to K.S.A. 60-3105, 60-3106 or 60-3107" is an element of the offense. He argues that K.S.A. 2015 Supp. 60-3104 provides the procedures necessary for an order to be issued under K.S.A. 60-3105, K.S.A. 2015 Supp. 60-3106, and K.S.A. 2015 Supp. 60-3107, and because

3

K.S.A. 2015 Supp. 60-3104(d) requires personal service, the State was required to prove that he was personally served with the order he was charged with violating.

In response, the State claims the issue is not reviewable because Hunter invited any error in the jury instructions. It is well established that a litigant may not invite error and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). The State points out that Hunter's proposed instructions were almost identical to the instructions given to the jury and that the only difference was that Hunter's proposed instructions used "Mr. Hunter" and "the defendant" in two places where the district court's instructions used "Raymon Hunter." The operative legal language was identical. Moreover, the State argues that when the district court asked whether there were any objections to the instructions, Hunter, through defense counsel, did not object.

Hunter counters that the invited error doctrine should not apply in this case for two reasons. First, relying on *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013), he argues that defense counsel's submission of infelicitous instructions was not a strategic decision because defense counsel may not have anticipated that the allegedly omitted element would be contested. Second, relying on *Verser*, 299 Kan. at 784, Hunter argues that the invited error doctrine should not apply because omission of an element of an offense from jury instructions is, or is at least akin to, structural error and a party cannot invite structural error.

We consider *Hargrove* unhelpful to Hunter. As to his first point, if the omitted language were truly an element of the offense, defense counsel should have included it in the instructions from the beginning. More importantly, the *Hargrove* panel ultimately held that "[b]ecause the instruction might have been part of Hargrove's defense strategy and the district court honored Hargrove's request [that] it be used, . . . the invited error

4

doctrine precludes direct appellate review premised on the constitutional defect in the instruction." 48 Kan. App. 2d at 551-52.

As to Hunter's second point, a similar error was alleged in *Hargrove*, in which the aggravated burglary jury instruction left out the elements of theft, the crime the defendant allegedly intended to commit when he entered the residence. The *Hargrove* panel found that omitting an element of a crime from the jury instructions invoked protections provided by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights yet concluded that the constitutional error was not structural. 48 Kan. App. 2d at 529-30, 555. Because so few errors are structural due to the fact that the error must be so intrinsically harmful that automatic reversal is required, see *Verser*, 299 Kan. at 784, we conclude the invited error doctrine applies here, and we cannot review Hunter's challenge to the jury instructions.

Even if the invited error doctrine were inapplicable, Hunter's underlying claim is suspect. While we agree that punishing someone for violating an order he or she knew nothing about would be unjust, K.S.A. 2015 Supp. 60-3104 merely requires personal service of the petition, not the final protection from abuse order. K.S.A. 60-3108 simply mandates that a copy of the final order be "issued" to the defendant. As K.S.A. 2015 Supp. 21-5924(a) prohibits knowing violations of a protective order, knowledge of the order is key, not the means by which knowledge of the order is obtained. Because knowledge of a protective order can be obtained by means other than by personal service, an element requiring proof of personal service is too restrictive. Accordingly, we are unpersuaded by Hunter's argument.

DID THE DISTRICT COURT ERR IN DESIGNATING HUNTER'S CONVICTIONS AS DOMESTIC VIOLENCE CONVICTIONS?

Hunter next claims the district court erred in designating his convictions as domestic violence offenses. The State concedes Hunter's point but disagrees with Hunter's analysis.

Interpretation of a statute is a question of law over which we exercise unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Statutory interpretation's most fundamental rule is "'that the intent of the legislature governs if that intent can be ascertained.'" *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016) (quoting *State v. Reese*, 300 Kan. 650, 653, 333 P.3d 149 [2014]). Legislative intent can be ascertained "through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When the statute is plain and unambiguous, [this] court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it." *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

K.S.A. 2015 Supp. 22-4616(a) states in part that "in all criminal cases filed in the district court, if there is evidence that the defendant committed a domestic violence offense, the trier of fact shall determine whether the defendant committed a domestic violence offense." A domestic violence offense is any crime including an act of domestic violence. K.S.A. 2015 Supp. 21-5111(j). Domestic violence is defined in K.S.A. 2015 Supp. 21-5111(i) and includes "an act or threatened act of violence against a person with whom the offender is involved or has been involved in a dating relationship." Our court has held that a domestic violence designation is applied using a multistep process:

> "(1) If there is evidence in a criminal case that the offense in question is a domestic
> violence offense, the trier of fact shall determine whether the offense is indeed one of

6

domestic violence; (2) If that determination is made, the district court shall place a domestic violence designation on the case; (3) If that designation is applied, the defendant shall be subject to a domestic violence assessment and shall follow its recommendations as part of his or her sentence." *State v. Gordon*, 50 Kan. App. 2d 1177, Syl. ¶ 2, 337 P.3d 720 (2014), *rev. denied* 302 Kan. 1015 (2015).

The trier of fact here did not determine that Hunter committed an act of domestic violence. Giving the words in K.S.A. 2015 Supp. 22-4616(a) their ordinary meaning, "the trier of fact" was the jury, and it was to determine whether Hunter committed a domestic violence offense. But a domestic violence jury instruction was not given. Instead, the district court made the domestic violence determination at sentencing. Because the district court—who was not the trier of fact—determined that Hunter had committed a domestic violence offense, the district court erred in designating Hunter's convictions as domestic violence offenses. Accordingly, we vacate that portion of the district court's order.

### DID THE DISTRICT COURT ERR IN ORDERING HUNTER TO REIMBURSE THE BOARD OF INDIGENTS' DEFENSE SERVICES FEES?

Finally, Hunter claims he should not be required to pay BIDS fees because he was convicted only of misdemeanors. Again, this issue is a question of statutory interpretation which is one of law subject to our unlimited review. *Collins*, 303 Kan. at 473-74.

K.S.A. 22-4503 states that a criminal defendant charged with a felony is entitled to an attorney. BIDS provides attorneys for indigent defendants charged with felonies. K.S.A. 22-4522(a). Kansas law requires that BIDS be reimbursed for the services it provides, specifically:

"If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables

7

as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases." K.S.A. 22-4513(a).

Surprisingly, it appears that no Kansas court has addressed this issue, although it is common for BIDS attorneys to represent defendants—like Hunter—who have both felony and misdemeanor charges. We agree with the State's argument that the language of K.S.A. 22-4513(a) suggests that the legislature intended for BIDS to be reimbursed in cases where the defendant is charged with both felony and misdemeanor offenses but is only convicted of one or more misdemeanor offenses because we cannot read something into the statute that is not there. See *Urban*, 291 Kan. at 216. In light of the fact that BIDS provided Hunter with an attorney who represented him not only on the felony charges but also on the misdemeanor charges and because the language "[i]f the defendant is convicted" contains no limitation or requirement that the defendant be convicted of a felony, we conclude the district court did not err in ordering Hunter to reimburse BIDS.

Affirmed in part and vacated in part.