NOT DESIGNATED FOR PUBLICATION

No. 126,906

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

SEBASTIAN CAPPS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID KAUFMAN, judge. Submitted without oral argument. Opinion filed February 13, 2026. Convictions affirmed, sentence vacated in part, and case remanded with directions.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PER CURIAM: Sebastian Capps was convicted by a jury of felon in possession of a weapon, a felony, and interference with law enforcement, a misdemeanor. The district court ordered Capps to register as an offender and sentenced him to a jail term for the misdemeanor offense, followed by a consecutive probationary term for the felony conviction. Capps timely appeals his sentences, claiming the district court should have imposed a probationary term for both convictions and should have awarded an additional 223 days of jail time credit. Capps also argues that the registration statute, K.S.A. 22-4902(a)(5), under which the district court imposed his registration requirement, is

1

unconstitutionally vague. Finally, Capps argues the State failed to provide sufficient evidence to prove beyond a reasonable doubt he knowingly interfered with law enforcement. After review, we affirm Capps' convictions and sentences but deny review of Capps' constitutional challenge to K.S.A. 22-4902(a)(5) raised for the first time on appeal. Additionally, we remand the case for the district court to determine if Capps is entitled to any additional jail credit.

FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2022, an individual reported a man walking back and forth along her fence allegedly exposing himself to her. A Wichita police officer was dispatched to the area and observed a man—later identified as Capps—matching the caller's description. The officer approached Capps and performed a pat-down search. Capps "had large bulky items all over his body in almost every pocket."

A Sedgwick County sheriff's deputy arrived on scene to assist the officer and stayed with Capps while the officer returned to his patrol vehicle to conduct a records search. The officer discovered Capps had a bench warrant for his arrest. The officer returned to the deputy and Capps and instructed Capps to place his hands behind his back because he was under arrest. Capps immediately pulled away from the officer and the deputy and ran away. Both the deputy and the officer pursued Capps on foot.

The deputy was about 10 to 15 yards behind Capps when he observed a handgun on the ground directly in the path where Capps had fled. Capps was caught by the officer while hiding nearby and arrested. The deputy reported to the officer he did not see Capps drop or throw the firearm, but the firearm was in Capps' direct path and was warm despite freezing temperatures. Capps later explained he ran from the officers because he did not believe he had a warrant for his arrest and was tired of police arresting him. Capps denied possessing the gun.

2

The State charged Capps with criminal possession of a weapon by a convicted felon, a severity level 8 nonperson felony, and interference with law enforcement, a class A nonperson misdemeanor. Before trial, the parties stipulated that Capps had previously been convicted of a felony that prevented him from possessing a weapon on the date of the incident and less than eight years had elapsed since he satisfied the sentence imposed.

A jury found Capps guilty of both counts. The district court sentenced Capps to 12 months in county jail for the misdemeanor offense, followed by a consecutive sentence of 18 months' probation for the felony offense with an underlying imprisonment term of 19 months. The district court, in exercising its discretion, ordered Capps to register as an offender under K.S.A. 2022 Supp. 22-4902(a)(5), which has not changed since 2022. ("'Offender' means . . . any person required by court order to register for an offense not otherwise required as provided in the Kansas offender registration act."). The district court explained it ordered registration because Capps had 27 criminal history entries that were all substantive crimes and Capps posed a risk to public safety. Additional facts are set forth as necessary.

ANALYSIS

*The District Court Did Not Err in Sentencing Capps*

Capps argues the district court erred in sentencing him to 12 months in county jail for his misdemeanor offense of interference with law enforcement with a consecutive sentence of probation for his primary offense—criminal possession of a weapon, a felony. Capps seeks remand for resentencing with instructions to order a sentence of probation for both the felony and misdemeanor convictions.

Capps acknowledges he failed to object to the district court's imposition of his sentences but argues the sentences were illegal and can be corrected at any time. See

K.S.A. 22-3504(a), (c)(1); *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Whether Capps' sentence is illegal under K.S.A. 22-3504 turns on interpretation of the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-6801 et seq. Statutory interpretation is a question of law subject to unlimited review. *State v. Roberts*, 314 Kan. 316, 319-20, 498 P.3d 725 (2021).

Capps relies on K.S.A. 2022 Supp. 21-6819(b)(8) to support his position that the district court erred in sentencing him to jail time in his misdemeanor case when his primary crime—a felony—was presumptive probation. K.S.A. 2022 Supp. 21-6819(b)(8) explains: "If the sentence for the primary crime is a nonprison sentence, a nonprison term will be imposed for each crime conviction." But K.S.A. 2022 Supp. 21-6802(c) states: "Except as otherwise provided, the sentencing guidelines and prosecuting standards shall be applicable to *felony* crimes committed on or after July 1, 1993." (Emphasis added.)

Capps' jail sentence stemmed from a misdemeanor violation, which is not governed by the KSGA. See *State v. Huerta*, 291 Kan. 831, 837, 247 P.3d 1043 (2011) (noting K.S.A. 21-4720[b]—the predecessor to K.S.A. 21-6819[b]—does not apply to misdemeanor sentences); *State v. Huff*, 277 Kan. 195, 197-98, 83 P.3d 206 (2004) (discussing K.S.A. 2002 Supp. 21-4720[b], now codified as K.S.A. 21-6819[b]). The district court had authority to sentence Capps to a jail term for interference with law enforcement, a class A misdemeanor, under K.S.A. 2022 Supp. 21-6602(a)(1), which provides for "a definite term of confinement in the county jail which shall be fixed by the court and shall not exceed one year." We observe no error in the way the district court ordered Capps to serve his sentences. And, given the passage of time from the date of Capps' sentencing, he should have already completed the jail portion of his sentence and now be serving his term of felony probation.

4

*Capps May Be Entitled to Additional Jail Time Credit*

Capps claims he was incarcerated for 223 days pending the disposition of this case and the district court erred in failing to award him 223 days of jail credit. Capps asks us to reverse and remand to the district court with directions to award an additional 223 days of jail credit in this case.

In his initial brief, Capps acknowledges he failed to raise the jail credit issue before the district court. Generally, "an appellate court will not address an issue raised for the first time on appeal, although there are limited exceptions to that rule." *State v. Allen*, 314 Kan. 280, 281, 497 P.3d 566 (2021). Capps claims the issue can be raised for the first time on appeal because (1) it "'involves only a question of law arising on proved or admitted facts and is determinative of the case; [and] (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights.'" See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Resolving the jail time credit issue on appeal serves the ends of justice because— if Capps is correct—he would be facing "a longer sentence without a legal basis[,] [which] would be a miscarriage of justice." *State v. Williams*, 311 Kan. 88, 94, 456 P.3d 540 (2020). Thus, we will address Capps' jail credit argument.

The right to jail time credit is statutory, and, as indicated above, we have unlimited review over questions of statutory interpretation. *Roberts*, 314 Kan. at 320. The jail credit statute in effect when Capps committed his crimes, K.S.A. 2022 Supp. 21-6615(a), stated in relevant part:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates

5

thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

In *State v. Ervin*, 320 Kan. 287, 311, 566 P.3d 481 (2025)—which was decided while this appeal was pending—our Supreme Court interpreted the relevant version of K.S.A. 21-6615(a), before it was amended in 2024, and found the statute "required a district court to award an allowance for all time spent incarcerated 'pending the disposition of the defendant's case.'" Our Supreme Court further explained the language of the statute "required the district judge to award one day of credit for each day [the defendant] was incarcerated pending disposition of [the defendant's] case regardless of whether he [or she] received an allowance for some or all that time against a sentence in another case." *Ervin*, 320 Kan. at 311-12.

*Ervin* became binding precedent while Capps' appeal was pending and, as a result, *Ervin* now controls Capps' request for jail time credit. See *State v. Mitchell*, 297 Kan. 118, 124-25, 298 P.3d 349 (2013). Here, the record reflects Capps was arrested on October 18, 2022, and spent two days in jail for which the district court awarded jail credit. While the record suggests Capps was in custody from January 26, 2023, until his sentencing on September 7, 2023, it also appears that at some point Capps was released on bond in this case until the date of conviction on July 18, 2023.

Under *Ervin*, the district court must now compute Capps' jail credit for all time spent incarcerated pending the disposition of his cases, regardless of whether he received an allowance for some or all of that time against another case. See 320 Kan. at 311-12. We are duty-bound to follow *Ervin*. See *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). But, as another panel of our court explained: "[I]t would be inappropriate to expand [*Ervin*'s] holding in an attempt to justify an award of jail time credit for a

6

subsequent incarceration after a defendant posts bond, is released from jail, and remains on bond until sentencing in the case for which the defendant is seeking additional credit." *State v. Hill*, 66 Kan. App. 2d 177, 180, 577 P.3d 670 (2025), *petition for rev. filed* October 27, 2025. Under K.S.A. 2022 Supp. 21-6615(a), Capps should not receive jail credit for the time he spent on bond in this case as he was not incarcerated pending the disposition of this case during that time. See *State v. Urban*, 291 Kan. 214, 220, 239 P.3d 837 (2010) ("'[R]elease on bail' is release from jail.").

Because the record is unclear as to when Capps was released on bond, the district court must make factual findings addressing the time Capps was out on bond pending the disposition of the charges and any time he was held in jail pending resolution of the charges in this case. We therefore remand to the district court to calculate Capps' additional jail time credit, if any, under *Ervin* and *Hill*.

*We Decline to Reach the Unpreserved Issue of Whether K.S.A. 22-4902(a)(5) Is Unconstitutionally Vague*

Capps also argues K.S.A. 22-4902(a)(5) is unconstitutionally vague as it fails to give ordinary people notice of the conduct it punishes and it invites arbitrary enforcement. Capps asks us to vacate the district court's order requiring him to register as an offender.

A statute's constitutionality presents a question of law subject to unlimited review. Generally, we presume a statute is constitutional and must resolve "all doubts in favor of a statute's validity." *State v. Ninh*, 320 Kan. 477, 488, 570 P.3d 1169 (2025). "'[W]e must interpret a statute in a manner that renders it constitutional if there is any reasonable construction that will maintain the legislature's apparent intent.'" *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018). As the party challenging the statute, Capps bears the burden of overcoming the presumption of constitutionality. See *Ninh*, 320 Kan. at 488.

In his initial brief, Capps admits he failed to raise the constitutionality of K.S.A. 22-4902(a)(5) before the district court but now claims the issue can be raised for the first time on appeal as "'(1) [t]he newly asserted claim involves only a question of law arising on proved or admitted facts and is determinative of the case; [and] (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights.'" See *Godfrey*, 301 Kan. at 1043. We are not obligated to consider an unpreserved claim even if the claim may meet an exception to the general rule. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

> "Whether [a defendant] can bring [a] constitutional claim for the first time on appeal depends on whether [the defendant] is bringing a facial challenge to the constitutionality of the statute in question or an as-applied challenge. . . .
>
> "A facial challenge is 'an attack on a statute itself as opposed to a particular application' of that law. In comparison, as its name suggests, an as-applied challenge contests the application of a statute to a particular set of circumstances, so resolving an as-applied challenge 'necessarily requires findings of fact.' [Citations omitted.]" *State v. Hinnenkamp*, 57 Kan. App. 2d 1, 4, 446 P.3d 1103 (2019).

Capps argues "the State is incorrect to suggest that this might be an 'as-applied' challenge," and, instead, makes a conclusory contention this is a facial constitutional challenge. Capps waives and abandons any claim this is an as-applied challenge, and we decline to address for the first time on appeal the conclusory contention this is a facial constitutional challenge. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed deemed waived and abandoned).

Further, when bringing an unpreserved constitutional challenge, Capps, as the appellant, is obligated to ensure a fully developed record before the district court to support his claims on appeal. Without that record, Capps has failed to demonstrate why we should consider his argument that a section of the Kansas Offender Registration Act

(KORA)—specifically K.S.A. 22-4902(a)(5)—is vague and allows arbitrary enforcement. See *State v. Meredith*, 306 Kan. 906, 910, 399 P.3d 859 (2017).

Contrary to Capps' argument that KORA has a criminal application, our Supreme Court has "repeatedly held that the legislature's intent in enacting KORA was to create a nonpunitive civil regulatory scheme." 306 Kan. at 911. Capps fails to set forth a record or argument to show why we should depart from that holding with regard to the specific subsection at issue here or to support a constitutional challenge based on a civil rather than criminal application. Thus, while Capps presents a question of law and makes challenges based on his fundamental due process rights as well as rights under the separation of powers doctrine, we decline to accept his request to address the issue for the first time on appeal. See *Gray*, 311 Kan. at 170.

*There Was Sufficient Evidence to Prove Capps Interfered with Law Enforcement*

Capps challenges the sufficiency of the evidence supporting his conviction of interference with law enforcement and asks us to reverse his conviction.

Our standard of review for a sufficiency challenge in a criminal case requires us to review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. "There must be evidence supporting each element of a crime to meet the sufficiency of the evidence standard." *State v. Hilyard*, 316 Kan. 326, 330-31, 515 P.3d 267 (2022). We will not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations. 316 Kan. at 331. It is only in rare cases in which the "evidence [is] so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt" that a guilty verdict will be reversed. *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018). To the extent we must interpret K.S.A. 2022 Supp. 21-5904(a)(3), our review is unlimited. See *State v. Moore*, 309 Kan. 825, 828, 441 P.3d 22 (2019).

The burden was on the State to establish beyond a reasonable doubt that Capps knowingly obstructed, resisted, or opposed a person authorized by law to serve process in the service or execution or in the attempt to serve or execute an arrest warrant. See K.S.A. 21-5108(a); K.S.A. 2022 Supp. 21-5904(a)(3). Capps essentially argues he could not have committed the crime of interference with law enforcement because he did not know that avoiding officers obstructed their attempt to execute an arrest warrant on him. He also claims the State failed to prove the requisite intent to commit the crime.

K.S.A. 2022 Supp. 21-5904(a)(3) states: "Interference with law enforcement is . . . knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any . . . warrant." Capps contends the knowing mental state refers to every element of the crime, which, here, would require the State to prove beyond a reasonable doubt Capps knew the officer was attempting to serve process.

Capps acknowledges that two panels of our court have rejected this argument. See *State v. Lyne*, 17 Kan. App. 2d 761, 765-66, 844 P.2d 734 (1992) (rejecting defense theory that defendant must know of existence of court order under which officer is acting); *State v. Gehring*, No. 111,346, 2015 WL 1310825, at *3 (Kan. App. 2015) (unpublished opinion) ("Knowingly obstructing, resisting, or opposing an officer in the attempt to serve a warrant does not require that the person being pursued knew there was a warrant."). While we are not bound by another panel's decision, see *State v. Fahnert*, 54 Kan. App. 2d 45, 56, 396 P.3d 723 (2017), our Supreme Court recently addressed a nearly identical issue in *State v. Stubbs*, 320 Kan. 568, 570 P.3d 1209 (2025).

In *Stubbs*, our Supreme Court addressed a narrow challenge on the "'knowingly obstructing'" mental state element required in an interference with law enforcement conviction. 320 Kan. at 589. There, Stubbs stabbed a man and fled the scene when he heard sirens approaching. Stubbs knew the police had been called and ran in front of a

10

patrol vehicle as the officer activated his lights and sirens. The officer stepped out of the vehicle and yelled, "'Stop! Police!'" 320 Kan. at 589. Stubbs argued on appeal that "the State failed to prove he actually heard any police commands or knew officers had ordered him to stop. He insist[ed] he ran purely from shock and trauma." 320 Kan. at 589. Our Supreme Court found, viewing the evidence in the light most favorable to the State, a reasonable juror "could readily reject Stubbs' explanation and conclude he knew exactly what he was doing:  running from law enforcement." 320 Kan. at 589.

The same is true here. The jurors heard testimony from the officer, who was dispatched to an area in Wichita and provided the description of a person believed to be involved in that call. The officer was wearing his police uniform with his badge and driving a marked patrol vehicle. The officer stopped his patrol vehicle, got out of the car, and made contact with the person on the sidewalk matching his dispatch's description. The individual was identified as Capps. During the officer's interaction with Capps, he patted down Capps to check for weapons and dangerous contraband.

The jurors also heard testimony from the deputy who arrived on scene to provide back-up for the officer. After the pat-down, the deputy stayed with Capps while the officer went back to his patrol vehicle to run a search on Capps. The officer found out Capps had an active arrest warrant, and the deputy testified he was made aware of the warrant as well. Together, the officers tried to arrest Capps, but Capps pulled away, tried to avoid the arrest, and eventually ran across the street and through a park. Both officers chased after Capps before catching and arresting him in the neighborhood. The officer testified that his efforts to execute the arrest warrant were hindered by Capps running. Viewing the evidence in the light most favorable to the State, a reasonable juror could find Capps knew exactly what he was doing:  running from law enforcement. See *Stubbs*, 320 Kan. at 589. Accordingly, sufficient evidence supports Capps' conviction.

Convictions affirmed, sentence vacated in part, and case remanded with directions.